McCUNE v GRIMALDI BUICK-OPEL, INC

1. Contracts—Time for Performance—Reasonable Time.

   A "reasonable time" for performance is read into a contract where the contract does not specify a time for performance.

2. Damages—Mitigation—Insurance.

   Damages for breach of a contract to provide insurance may generally be mitigated by securing other insurance and failure to mitigate damages is an affirmative defense which must be pled, but no showing of an attempt to secure other insurance to mitigate damages is required when the impossibility of mitigation has been demonstrated by a showing that coverage could not have been secured following the defendant's breach of its contract to provide the insurance.

3. Contracts—Breach—Mental Anguish—Damages.

   Damages for mental suffering may be recovered in an action for breach of contract in a certain class of cases; when there is a contract concerned with matters of mental concern and solicitude, then a breach of duty with respect to it will inevitably and necessarily result in mental anguish, pain, and suffering, and in such cases the parties may reasonably be said to have contracted with reference to the payment of damages in event of breach because they are an integral and inseparable part of it.

4. Contracts—Breach—Mental Anguish—Hospital and Medical Insurance—Damages.

   Damages for mental anguish may be recovered in an action for breach of a contract involving the providing of hospital and medical insurance, provision of which is certainly a matter of "mental concern and solicitude" on the part of most family heads.

References for Points in Headnotes

[1] 17 Am Jur 2d, Contracts §§ 80, 329, 330.
[2] 22 Am Jur 2d, Damages § 203.
[3, 4] 22 Am Jur 2d, Damages §§ 195–198.

Appeal from Oakland, James S. Thorburn, J. Submitted Division 2 March 10, 1972, at Detroit. (Docket No. 12148.) Decided March 26, 1973.

Complaint by Harold McCune against Grimaldi Buick-Opel, Inc., for breach of an employment contract. Judgment for defendant of no cause of action, and third-party complaint by Grimaldi Buick-Opel, Inc., against Michigan Hospital Service for indemnification dismissed. Plaintiff appeals. Reversed and remanded.

*DeGennaro & Corman* (by *Joseph W. Dellapenna),* for plaintiff.

*Hyman & Rice* (by *Edward D. Gold),* for defendant Grimaldi.

Before: Levin, P. J., and V. J. Brennan and Van Valkenburg,* JJ.

V. J. Brennan, J. This case was tried on stipulated facts before a judge of the Oakland County Circuit Court, sitting without a jury. The order of events at trial is rather interesting. Plaintiff's counsel first gave an opening statement, and the attorneys for the other two parties stipulated to the facts as set forth by plaintiff's counsel. Following this stipulation, plaintiff's counsel delivered a closing argument, followed immediately by the trial court's rendition of an opinion from the bench. The court therein decided to enter a judgment of no cause for action on behalf of the defendants. Plaintiff appeals.

Although the proceedings below occupy a mere 20 pages of transcript, the facts of the case are

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

somewhat confusing. They are confusing primarily because of the tardy billing practices of the third-party defendant, Michigan Hospital Service. We will begin our approach by setting forth, as clearly as possible, the stipulated facts.

Plaintiff Harold McCune and defendant Grimaldi Buick-Opel, Inc, entered into a contract (the pleadings reveal that this contract was made in mid-August of 1968). McCune agreed to work for Grimaldi, and Grimaldi agreed to pay McCune a salary. Grimaldi also agreed to pay one half of the premium necessary to extend Blue Cross-Blue Shield coverage to McCune and his family, and to withhold the other one half of the necessary premium from McCune's paycheck. Grimaldi was to submit the entire premium when billed by Blue Cross-Blue Shield. A copy of a document entitled "Comprehensive Hospital Care Certificate", issued by third-party defendant Michigan Hospital Service (Blue Cross), was accepted into evidence upon stipulation of the parties.

The parties also agreed that Grimaldi failed to promptly and diligently remit the necessary premium for McCune's coverage upon being billed by Blue Cross-Blue Shield. *On November 10, 1968, Blue Cross-Blue Shield notified Grimaldi that the premium for McCune's coverage for the period September 23 to October 23, 1968, was due. Plaintiff McCune's portion of that premium had been deducted from his paycheck by Grimaldi on November 7, 1968. Grimaldi, however, did not remit this premium to Blue Cross-Blue Shield until some time in July of 1969.* Grimaldi admitted that it erred by failing to remit the premium promptly. The error appears to have occurred because the Blue Cross-Blue Shield bill for the period September 23, 1968, to October 23, 1968, was not received

by Grimaldi until early November, 1968, at which time McCune was no longer employed by Grimaldi.

As a result of defendant's failure to remit the premium promptly, plaintiff McCune's Blue Cross-Blue Shield coverage was terminated as of September 23, 1968. On November 1, 1968, while plaintiff was still employed by Grimaldi, plaintiff's wife delivered premature twins and plaintiff was obliged to incur medical and hospital bills in the approximate amount of $5,400. These bills would have been paid by Blue Cross-Blue Shield had coverage been in effect. McCune had every reason to believe coverage was in effect since Grimaldi withheld a premium on November 7, 1968. The parties further stipulated that plaintiff incurred damages for harassment and humiliation in the amount of $1,000 a month from January 1, 1969, to date of the trial, June 10, 1971.

Plaintiff also pointed out that, according to the contract of insurance issued by Blue Cross and Blue Shield, in order to be eligible for maternity benefits, the family must have been covered by Blue Cross-Blue Shield for 270 consecutive days immediately prior to birth. It was plaintiff's theory that since defendant Grimaldi's breach resulted in the retroactive termination of plaintiff's medical insurance as of September 23, 1968, by the terms of the contract of insurance it was *impossible* for plaintiff to secure the continuous coverage necessary to be eligible for maternity benefits. (But for Grimaldi's breach, McCune would have had the necessary consecutive coverage through coverage provided by his prior employer.)

We summarize the relevant portions of the opinion of the trial court as follows: Payment was ultimately received and credited by Blue Cross-

Blue Shield. At the time this payment was credited by Blue Cross-Blue Shield, the plaintiff had made no effort to pay his share of the next month's premium. Therefore, even if Grimaldi was obliged to pay one half of the premium for the month in which the births occurred, it would not have been accepted by Blue Cross-Blue Shield and there would be no coverage. The court also opined that plaintiff's claimed damages for harassment, pain and suffering were too remote, and in any event, could have been mitigated.

The plaintiff, in a copiously documented brief, raises several issues which we choose to rephrase as follows: (1) Were the conclusions and holding of the trial judge erroneous? (2) If so, to what damages is the plaintiff entitled? Defendant Grimaldi merely states the position that it was obliged to furnish coverage until October 23, 1968, and that its belated payment met that obligation. The third-party defendant, Michigan Hospital Service, has chosen not to submit a brief.

It is our opinion that both the trial court and counsel for Grimaldi are wrong. Both seem to believe that the plaintiff is arguing that Grimaldi should have paid for Blue Cross-Blue Shield coverage through the date on which plaintiff's twin sons were born. The gravamen of plaintiff's complaint is, however, Grimaldi's failure to *timely* perform. According to the stipulation between the parties, Grimaldi contracted to submit the entire premium *upon being billed by Blue Cross-Blue Shield.* Further, even if this stipulation did not exist, where a contract does not specify a time for performance, a "reasonable time" is read into the contract. *Duke v Miller,* 355 Mich 540 (1959); *Levine v Johnson,* 10 Mich App 152 (1968); *Gordon v Great Lakes Bowling Corp,* 18 Mich App 358 (1969); *Kiff Con-*

*tractors, Inc v Beeman,* 10 Mich App 207 (1968). The failure of Grimaldi to perform its contract, which failure occurred after the birth of the twins on November 1, caused the cancellation of plaintiff's Blue Cross-Blue Shield coverage as of September 23, 1968.

While it is true that damages for breach of a contract to provide insurance may generally be mitigated by securing other insurance (see 5 Corbin on Contracts, § 1039, p 246) and failure to mitigate damages is an affirmative defense which must be pled *(Fothergill v McKay Press,* 374 Mich 138 [1965]), the plaintiff in his case in chief has nevertheless demonstrated the impossibility of mitigation. First, the defendant breached its contract after the twins had been born. We cannot comprehend any manner in which the plaintiff could have secured insurance coverage for an event which had already occurred. Second, the 270-day continuous coverage provision of the Blue Cross-Blue Shield contract would operate to deny plaintiff eligibility for maternity benefits if he had immediately joined another Blue Cross-Blue Shield group. Nor would it have been possible for plaintiff to secure such coverage following Grimaldi's belated payment. Furthermore, nowhere in the Michigan Hospital Service contract, which was received in evidence, nor in the record, do we find any indication that it was ever possible for the plaintiff to secure Blue Cross-Blue Shield coverage following defendant's breach. It is abundantly clear, therefore, that plaintiff has proven his allegations, and all that remains is the proper assessment of damages.

First, there can be no doubt that the plaintiff is entitled to the full amount of the medical expenses which would have been paid by Blue Cross-Blue Shield had coverage been in effect.

The plaintiff also claimed damages for mental anguish, humiliation, embarrassment, and harassment by medical creditors which occurred as a result of defendant's breach of contract. At trial, the parties stipulated, first, that such damages were incurred and second, that they were incurred in the amount of $29,333.33. Therefore the only question for this Court on appeal is the correctness of the trial court's holding that these damages were too remote. Damages for mental suffering may be recovered in an action for breach of contract in a certain class of cases. In *Stewart v Rudner,* 349 Mich 459, 471 (1957), our Supreme Court held as follows:

"The cases to which reference was just made involve a clear exception to the 'rule' [if there now is any such] that damages for mental suffering are not recoverable in contract actions. They are. When we have a contract concerned not with trade and commerce but with life and death, not with profit but with elements of personality, not with pecuniary aggrandizement but with matters of mental concern and solicitude, then a breach of duty with respect to such contracts will inevitably and necessarily result in mental anguish, pain and suffering. In such cases the parties may reasonably be said to have contracted with reference to the payment of damages therefor in event of breach. Far from being outside the contemplation of the parties they are an integral and inseparable part of it."

See also *Avery v Arnold Home, Inc,* 17 Mich App 240 (1969). We hold that this case is the type of contract case in which damages for mental anguish may be recovered. It does not deal with trade and commerce, but with hospital and medical insurance, the provision of which is certainly a matter of "mental concern and solicitude" on the part of most family heads. Plaintiff is entitled to

damages for mental anguish as stipulated to in the court below.

We make no comment regarding Grimaldi's claim against the third-party defendant, but leave that for disposition on remand.

Reversed and remanded for proceedings not inconsistent with this opinion.

All concurred.