LIDDELL v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket No. 46368. Submitted June 2, 1980, at Detroit.—Decided
January 6, 1981. Leave to appeal applied for.

Darrold W. Liddell was injured in an automobile accident and his
insurer, Detroit Automobile Inter-Insurance Exchange, paid
personal protection benefits for lost wages and medical expen-
ses. Upon receiving an unsolicited report from Liddell's employ-
er's physician stating that Liddell could return to work, DAIIE
stopped payment of benefits, despite receiving reports from
Liddell's two personal doctors which indicated that he contin-
ued to suffer problems related to the accident. Liddell brought
an action against DAIIE in Detroit Common Pleas Court for
the overdue payments. By the time of trial the amount alleg-
edly owed exceeded the jurisdictional amount of the Common
Pleas Court. An action was brought in Wayne Circuit Court
and by stipulation of the parties the common pleas action was
consolidated with the circuit court action. The Wayne Circuit
Court, Sharon Tevis Finch, J., entered judgment on a jury
verdict in favor of plaintiff, awarding recovery for medical

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 17 Am Jur 2d, Contracts § 441 et seq.
    22 Am Jur 2d, Damages § 48.
[2] 22 Am Jur 2d, Damages § 195.
[4] 7 Am Jur 2d (Rev), Automobile Insurance § 345.
[5] 7A Am Jur 2d, Automobile Insurance § 422.
    44 Am Jur 2d, Insurance §§ 1797-1799.
[6] 4 Am Jur 2d, Appeal and Error § 76.
[7] 7 Am Jur 2d (Rev), Attorneys at Law § 277 et seq.
    Amount of compensation for attorney for service in insurance
    matters in absence of contract or statute fixing amount. 56
    ALR3d 187.
[8] 7 Am Jur 2d (Rev), Attorneys at Law § 293.
[9] 51 Am Jur 2d, Limitation of Actions § 430.
[10] 51 Am Jur 2d, Limitation of Actions § 312.
    Statute permitting new action after failure of original action com-
    menced within period of limitation, as applicable in cases where
    original action failed for lack of jurisdiction. 6 ALR3d 1043.

benefits, lost wage benefits, damages for mental anguish, attorney fees, costs, and interest. DAIIE appeals. *Held:*

1. The award of damages for mental anguish was improper. The insurance contract for no-fault insurance benefits is a pecuniary contract requiring the insurer to pay certain sums upon the occurrence of a specified event. It is not the type of personal contract the breach of which will foreseeably result in mental distress nor can it be said that damages for mental distress were within the contemplation of the parties upon entering into the contract.

2. The trial court's finding that the defendant's delay in making payments was unreasonable is not clearly erroneous. Therefore, the plaintiff was entitled to the award of attorney fees, pursuant to statute.

3. The amount of attorney fees was based upon the plaintiff's contingent fee agreement with his attorney. The existence of a contingent fee agreement is only one of several factors which should be considered by the court in determining the reasonableness of the fee. The award is vacated and, on remand, a hearing is to be held for a new determination of attorney fees.

4. The trial court erroneously awarded 12 percent interest on the amount of attorney fees. Interest on the attorney fees should be limited to six percent.

5. The one-year limitation period in the no-fault act does not restrict the plaintiff to recovery in the circuit court of only benefits payable within one year of the commencement of the circuit court action, because the defendant waived its right to raise this defense by failing to raise it in its answer to the complaint or by motion and because the limitation period was tolled when personal jurisdiction was established in the common pleas action and the matter was subsequently renewed in the proper court.

Affirmed in part, reversed in part, and remanded.

1. DAMAGES — CONTRACTS — BREACH OF CONTRACT.

Damages generally recoverable for a breach of contract are those which may fairly and reasonably be considered as arising naturally from the breach itself or which may reasonably be supposed to have been within the contemplation of both parties at the time the contract was made, as the probable result of its breach.

2. DAMAGES — CONTRACTS — BREACH OF CONTRACT — MENTAL DISTRESS.

Generally, damages for mental distress are not recoverable in an

action for breach of contract, but an exception may be made in cases where the contract concerns a matter of mental concern and solicitude; where injuries to the emotions are foreseeable they should be compensated for.

3. INSURANCE — CONTRACTS — NO-FAULT INSURANCE — BREACH OF CONTRACT — MENTAL DISTRESS.

A contract for no-fault insurance benefits is a pecuniary contract requiring the insurer to pay certain sums upon the occurrence of a specified event; it is not the type of personal contract the breach of which will foreseeably result in mental distress nor can it be said that damages for mental distress are within the contemplation of the parties when such a contract is entered into, therefore, damages for mental distress for breach of the contract are not recoverable.

4. INSURANCE — NO-FAULT INSURANCE — ATTORNEY FEES — STATUTES.

A court may award attorney fees to a claimant where an insurer has unreasonably refused or delayed making payments under the no-fault automobile insurance act (MCL 500.3148[1]; MSA 24.13148[1]).

5. INSURANCE — DELAY IN PAYMENT — UNREASONABLENESS.

An insurer's delay in making payments to an insured is not unreasonable where the delay is the product of a legitimate question of statutory construction, constitutional law, or bona fide factual uncertainty.

6. APPEAL — FINDINGS OF FACT — COURT RULES.

A trial court's finding of fact will be disturbed on appeal only if that finding is clearly erroneous (GCR 1963, 517.1).

7. ATTORNEY AND CLIENT — ATTORNEY FEES — REASONABLE FEES — CONTINGENT FEES.

Factors to be taken into consideration in determining the reasonableness of an attorney's fee include: 1) the professional standing and experience of the attorney, 2) the skill, time and labor involved, 3) the amount in question and the results achieved, 4) the difficulty of the case, 5) the expenses incurred, and 6) the nature and length of the professional relationship with the client; a contingent fee agreement may also be considered as a factor, but is not by itself determinative.

8. INTEREST — ATTORNEY FEES — STATUTES.

The standard judgment interest rate of six percent is applicable to an award of attorney fees in the absence of a statute

authorizing a special interest payment for attorney fees (MCL 600.6013; MSA 27A.6013).

9. LIMITATION OF ACTIONS — DEFENSES — WAIVER OF DEFENSE — COURT RULES.

A defendant waives the right to raise the statute of limitations as a defense where he fails to assert the defense either in his answer or by motion in the trial court (GCR 1963, 111.7, 116.1[5]).

10. LIMITATION OF ACTIONS — JURISDICTION — PROPER COURT.

A statute of limitations is tolled when personal jurisdiction is properly established over the defendant, even where the court is without subject matter jurisdiction, where the matter is then renewed in the proper court.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *David K. Barnes*), for plaintiff.

*Dickinson, Pike, Mourad, Brandt & Hanlon* (by *Kenneth D. Dodson*) (*Gromek, Bendure & Thomas* [by *Carl L. Gromek* and *James G. Gross*], of counsel), for defendant.

Before: R. M. MAHER, P.J., and BRONSON and T. C. QUINN,* JJ.

R. M. MAHER, P.J. The plaintiff was injured in an automobile accident on June 7, 1975. The defendant, Detroit Automobile Inter-Insurance Exchange (hereinafter DAIIE), was his no-fault insurer and paid him personal protection benefits for lost wages and medical expenses until February 10, 1976, when payment was terminated. On September 28, 1976, the plaintiff commenced suit against DAIIE in the Common Pleas Court for the City of Detroit for the overdue payments. The Common Pleas action was scheduled for trial on

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

January 4, 1979. By the date of trial, the amounts allegedly owed the plaintiff exceeded the jurisdictional amount of $10,000. By agreement of the parties, the Common Pleas action was adjourned and consolidated with a circuit court action. Plaintiff commenced action in the Wayne County Circuit Court on January 31, 1979, claiming the withheld benefits, attorney fees, interest and damages for mental anguish resulting from defendant's malicious breach of the insurance contract.

A jury trial was conducted on June 12 to 15, 1979. The jury awarded plaintiff a recovery of $5,789.30 for medical benefits, $20,228.41 for wage loss benefits, and $20,000 for "emotional distress and/or mental anguish", for a total of $46,017.71. Subsequent to a hearing on plaintiff's motion for entry of judgment, the trial court entered a judgment on the jury award for $46,107[1] together with 12 percent interest on the personal protection insurance benefits, as provided by MCL 500.3142(3); MSA 24.13142(3), and six percent interest on the amount of damages for mental anguish. The trial court also ordered the payment of $10,945 as attorney fees with 12 percent interest and $396.10 as costs with six percent interest, the interest in both instances to accrue from the date of judgment until its satisfaction. From this judgment, the defendant DAIIE appeals as of right.

The plaintiff was employed by the Ford Motor Company prior to the accident. He had an ulcer and had been injured previously in automobile accidents which occurred in 1962 and 1973. In 1968, plaintiff had surgery to repair a hernia. On June 7, 1975, plaintiff's automobile was struck in

[1] Other than the fact that the judgment awarded $89.70 more than the verdict for medical benefits and $.41 less for work loss benefits the discrepancy between the verdict and this portion of the judgment is unexplained.

its side by a pickup truck. Mr. Liddell suffered a broken nose and a fractured thumb, as well as three broken ribs. Subsequently, Mr. Liddell visited various physicians for various complaints including ringing in his ears, migraine headaches, stammering, disequilibrium, anxiety, depression, a bleeding ulcer, and sleep disturbance. In March of 1976, the plaintiff began seeing Dr. Lee, a psychiatrist, who treated him with psychoanalysis and chemotherapy for severe depression, which Dr. Lee felt had been precipitated by the accident of June 6, 1975.

On February 9, 1976, plaintiff went to Dr. Sadzikowski, his employer's doctor, for a complete physical examination. Dr. Sadzikowski determined that plaintiff was capable of returning to work as of February 10, 1976, and sent DAIIE an unsolicited letter to that effect. Without checking further, DAIIE notified plaintiff of its decision to stop payment as of February 13, 1976, absent further medical proof that his condition was caused by the accident. On February 26, 1976, DAIIE received a report from Dr. Imperio that plaintiff had been hospitalized for a condition related to the accident. Defendant did not contact Dr. Imperio. Dr. Lee submitted a letter to defendant on April 5, 1976, wherein he related plaintiff's condition to the accident. Despite this, DAIIE informed Mr. Liddell on April 13, 1976, that his disability was not related to his accident, so benefits were not forthcoming.

The first issue for our consideration is whether plaintiff can recover damages for mental anguish resulting from the breach of a no-fault insurance contract.

In *Miholevich v Mid-West Mutual Auto Ins Co,* 261 Mich 495, 498; 246 NW 202 (1933), the Michigan Supreme Court stated the rule for damages

which are generally recoverable for a breach of contract: such damages which may fairly and reasonably be considered as arising naturally from the breach of contract itself, or such as may reasonably be supposed to have been within the contemplation of both parties at the time the contract was made, as the probable result of its breach. This is based on the classic case of *Hadley v Baxendale,* 9 Exch 341; 156 Eng Rep 145 (1854), which divides contract damages into two categories: "general", or those which arise naturally from the breach, and "consequential", which may reasonably be supposed to have been within contemplation of the parties when they entered into the contract. The Court in *Miholevich* then went on to allow plaintiff to recover damages for the "shame and mortification" which resulted from his arrest on a body execution when the defendant insurance company defaulted in paying a judgment under a liability insurance policy on plaintiff's automobile. Under the law then existing, it was foreseeable that the insured would be subject to arrest for nonpayment, so plaintiff could recover for "consequential" damages.

In *Stewart v Rudner,* 349 Mich 459; 84 NW2d 816 (1957), the Supreme Court distinguished between those contracts which are purely commercial or pecuniary in nature, where damages for mental distress were "too remote" and not within the contemplation of the parties, and those contracts which are more personal in nature, where the injury to feelings is compensable because they proceed "directly and naturally" from the breach. The latter type of contract would include actions for breach of promise to marry, breach of contract for lodging at a hotel, and breach of contract for burial. The Court went on to permit plaintiffs to

recover for mental distress where a physician breached his contract to deliver a child by Caesarian section, resulting in the death of the infant. The Court summarized its reasoning as follows:

"The cases to which reference was just made involve a clear exception to the "rule" (if there now is any such) that damages for mental suffering are not recoverable in contract actions. They are. When we have a contract concerned not with trade and commerce but with life and death, not with profit but with elements of personality, not with pecuniary aggrandizement but with matters of mental concern and solicitude, then a breach of duty with respect to such contracts will inevitably and necessarily result in mental anguish, pain and suffering. In such cases the parties may reasonably be said to have contracted with reference to the payment of damages therefor in event of breach. Far from being outside the contemplation of the parties they are an integral and inseparable part of it." *Id.,* 471.

In *Jankowski v Mazzotta,* 7 Mich App 483; 152 NW2d 49 (1967), this Court noted that mental suffering has long been recognized as an element in tort actions. See, *e.g., Fishett v State Farm Mutual Automobile Ins Co,* 3 Mich App 688; 143 NW2d 612 (1966). However, damages for mental anguish in contract cases were usually restricted to situations where there was wanton or reckless misconduct, or where the contract is of a very personal nature. In *Jankowski,* the defendants alleged that plaintiff, a building contractor, had deviated from specifications on the custom house he was hired to build, resulting in extreme mental anguish to the defendants. In upholding the trial court's decision striking the request for damages for mental anguish, the Court reasoned as follows:

"The merits of these claims are not before this Court, and we make no decision on the mertis except that the alleged breaches of contract could be corrected by reworking or refinishing, and the appellants could be fully compensated without resort to damages for mental anguish. The distinction between this case and the cases which allowed recovery for mental anguish for breach of contract is that here the loss involved only the pecuniary loss of having to have the job done over, while in the cases allowing recovery the situation could never be adequately corrected. In cases allowing such recovery the court could not give life to a dead child, nor could the dignity of a spoiled funeral be restored. In every case of a contract breach, there is bound to be vexation and annoyance to one or both of the contracting parties. Whether such disappointment is real or imaginary, it is the natural result of a breach of contract. Recovery for such mental anguish, however, has been properly circumscribed within rather narrow limits by the precedents and rules of law applicable in Michigan." *Jankowski v Mazzotta, supra,* 487.

In the same vein, *Isagholian v Carnegie Institute of Detroit, Inc,* 51 Mich App 220; 214 NW2d 864 (1974), involved a plaintiff who sued his former employer for breach of an employment contract, a situation inherently fraught with distress. In rejecting his claim for damages based on the resulting mental anguish, the Court stated that a prerequisite to recovery for mental suffering in a contract action is that the agreement contains not even an "'iota of the commercial'". *Id.,* 222, quoting *Stewart v Rudner, supra,* 472.

Two more recent decisions of this Court have analyzed the problem similarly. In *Riggs v Fremont Mutual Ins Co,* 85 Mich App 203; 270 NW2d 654 (1978), this Court held that a contract to insure a dwelling against a fire loss is not a contract of a personal nature, and thus plaintiffs were not entitled to recover exemplary damages

when payment was denied based on defendant's belief that plaintiffs had themselves set the fire. The Court added that the insurer had not acted maliciously, recklessly, or negligently by defending against what it believed was a fraudulent claim.

In *Fletcher v Aetna Casualty & Surety Co,* 80 Mich App 439; 264 NW2d 19 (1978), plaintiff's ward was severely injured when the motorcycle on which he was riding collided with an uninsured motorist. Plaintiff attempted to "stack" uninsured motorist coverage on policies issued to both herself and her husband by Aetna. Aetna rejected plaintiff's claim for $40,000, and refused to pay the $20,000 which it admittedly owed unless plaintiff executed a release of all claims against Aetna, including the claim that uninsured motorist coverages could be "stacked". On appeal, plaintiff claimed exemplary damages for Aetna's refusal to pay. This Court said:

"It is also argued by plaintiff that an award for exemplary damages should have been rendered against Aetna. In support of that position, plaintiff urges that Aetna acted in bad faith when it refused to pay the amount of its admitted liability. However, bad faith alone will not entitle an aggrieved party to recover exemplary damages from one who breaches a contract. Rather, the nature of the contract must be examined to ascertain whether it concerns 'matters of mental concern and solicitude'. *Stewart v Rudner,* 349 Mich 459, 471; 84 NW2d 816, 824 (1957).

"Assuming *arguendo* that Aetna's breach was intentional, nevertheless, we conclude that the nature of the contract would not sustain an award of exemplary damages. The character of the contract is pecuniary only. Upon the occurrence of specified events, Aetna was to become liable for nothing more than the payment of money. While a breach by Aetna would cause plaintiff some degree of annoyance, that can be said to arise in almost every context in which a breach of

contract occurs. * * * The contract in the case under review does not possess the foregoing qualities that would entitle plaintiff to exemplary damages against Aetna." *Id.,* 444-445.

Inexplicably, there are other cases where this Court has expanded on the holding of *Stewart v Rudner, supra,* by permitting a recovery of damages for mental distress in actions for breach of insurance contracts which are essentially pecuniary in nature. In *McCune v Grimaldi Buick-Opel, Inc,* 45 Mich App 472; 206 NW2d 742 (1973), the defendant was late in remitting its portion of the plaintiff-employee's Blue Cross payment, resulting in cancellation of his policy. The plaintiff sought to recover, *inter alia,* for mental anguish, humiliation, embarrassment, and harassment by medical creditors which occurred as a result of defendant's breach. This Court held that such damages would be appropriate, since the contract did not deal with "trade and commerce", but with hospital and medical insurance, the provision of which is a matter of "mental concern and solicitude" to most family heads.

In *Seaton v State Farm Life Ins Co,* 75 Mich App 252; 254 NW2d 858 (1977), this Court held that defendant's refusal to pay the proceeds of a life insurance policy entailed a matter of "mental concern and solicitude" and said that the jury should be instructed on mental anguish as an element of damages upon retrial.

In *Palmer v Pacific Indemnity Co,* 74 Mich App 259; 254 NW2d 52 (1977), the defendant failed to appeal a medical malpractice judgment which greatly exceeded the policy limits. This Court concluded that the failure to appeal constituted a breach of the contractual duty to defend, and that the plaintiff's mental distress stemming from the

failure to appeal would be considered foreseeable and could properly be submitted to the jury.

After submission of the instant case, the Supreme Court clarified the issue in *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401; 295 NW2d 50 (1980). In *Kewin,* plaintiff brought suit for breach of a disability insurance contract. After a jury trial, a verdict of $16,500 was returned under the contract. In addition, plaintiff was awarded $75,000 for mental or emotional distress and $50,000 as exemplary damages. On appeal, this Court held that the contract involved matters of mental concern and solicitude and that damages for mental distress were properly recoverable. It was further held, however, that the damages for mental distress and the exemplary damages could not both be recovered as they were for the same mental anguish, and the $75,000 award for mental distress was vacated.

On further appeal of the case, the Supreme Court began by stating that, in general, damages for mental distress are not recoverable in an action for breach of contract. Exceptions were noted, including the case of *Stewart v Rudner, supra.* The Court then contrasted the wholly noncommercial situation presented in *Stewart* with the case of a disability insurance contract:

"The nature and object of the agreement justified the treatment accorded it in *Stewart.* A contract to perform a Caesarean section is not a commercial contract in which pecuniary interests are most important. Rather, such a contract involves 'rights we cherish, dignities we respect, emotions recognized by all as both sacred and personal'. *Stewart,* 469. Where such interests are invaded by breach of a contract meant to secure their protection, mental distress is a particularly likely result. Flowing naturally from the breach, these injuries

to the emotions are foreseeable and must be compensated despite the difficulty of monetary estimation.

"Insurance contracts for disability income protection do not come within the reach of *Stewart.* Such contracts are commercial in nature; they are agreements to pay a sum of money upon the occurrence of a specified event, *Secor v Pioneer Foundry Co,* 20 Mich App 30, 35; 173 NW2d 780 (1969); 14 Michigan Law & Practice, Insurance, § 71, p 50. The damage suffered upon the breach of the agreement is capable of adequate compensation by reference to the terms of the contract. We recognize that breach of the insurance contract, as with almost any agreement, results in some annoyance and vexation. But recovery for those consequences is generally not allowed, absent evidence that they were within the contemplation of the parties at the time the contract was made. 22 Am Jur 2d, Damages, § 64, p 97. See, also, *Scottish Union & National Ins Co v Bejcy,* 201 F2d 163, 166 (CA 6, 1953)." *Kewin, supra,* 416-417.

The Court in *Kewin* then addressed whether *Miholevich v Mid-West Mutual Automobile Ins Co, supra,* provided an exception to the general rule and entitled plaintiff to recover for mental distress. As noted above, *Miholevich* involved an automobile collision liability insurance policy in which the insurance company agreed to satisfy judgments against the plaintiff arising from the use of his automobile. The company wilfully refused to pay such a judgment and plaintiff was arrested under the law as it then existed. Plaintiff's claim for mental distress damages was upheld on the basis that such damages were within the contemplation of the contracting parties. Since the law provided for plaintiff's arrest for nonpayment of such judgments, it was presumed the contract was entered into with an eye toward protecting against such an event. Applied to the facts in *Kewin,* the Court held that damages for mental distress were not similarly shown to have been

within the contemplation of the parties, nor did they flow naturally from the breach of the disability insurance contract. *Kewin, supra,* 417-419.

Summarizing the analysis of these two exceptions to the general rule of nonrecovery, the *Kewin* Court concluded:

"For the above reasons, we hold that a disability income protection insurance policy contract is a commercial contract, the mere breach of which does not give rise to a right to recover damages for mental distress. The damages recoverable are those damages that arise naturally from the breach, or which can reasonably be said to have been in contemplation of the parties at the time the contract was made. Absent proof of such contemplation, the damages recoverable do not include compensation for mental anguish." *Kewin, supra,* 419.

In our view, a contract for no-fault insurance benefits, like uninsured motorist coverage and disability insurance, is a pecuniary contract requiring the insurance company to pay certain sums upon the occurrence of a specified event. It is not the type of personal contract into which one enters to have a certain type of service performed, the omission of which will foreseeably result in mental distress. Nor can it be said that the damages for mental anguish which plaintiff recovered were within the contemplation of the parties. We consider that "pure" contract cases calling for payment of funds upon the occurrence of a certain event such as *Palmer* and *Seaton* have impermissibly broadened the scope of *Stewart v Rudner.* Accordingly, we vacate that portion of the judgment which was awarded on the basis of "emotional distress and/or mental anguish".

The second issue is whether the trial court erred in its findings that defendant unreasonably refused

to pay benefits to the plaintiff, thereby awarding attorney fees to the plaintiff.

The plaintiff prayed for and received attorney fees, which a court may award for unreasonable refusal to pay or delay in making payments under the no-fault act. MCL 500.3148(1); MSA 24.13148(1) provides:

"Sec. 3148. (1) An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment."

While the terms "unreasonably refused" and "unreasonably delayed" are not further defined, the case law indicates that a delay is not unreasonable where it is the product of a legitimate question of statutory construction, constitutional law, or even a bona fide factual uncertainty. See *Davidson v Johnson,* 76 Mich App 497, 504; 257 NW2d 139 (1977), *on reh* 79 Mich App 660, 666-667; 262 NW2d 887 (1977), *Richards v American Fellowship Mutual Ins Co,* 84 Mich App 629, 635; 270 NW2d 670 (1978), *Lewis v Detroit Automobile Inter-Ins Exchange,* 90 Mich App 251, 257; 282 NW2d 794 (1979).

The trial court's finding of unreasonableness on the part of the insurance company will be disturbed on appeal only if that finding is clearly erroneous. GCR 1963, 517.1; *Motorists Mutual Ins Co v Howard,* 21 Mich App 146, 149; 175 NW2d 351 (1970).

The record indicates that defendant received an unsolicited report from Dr. Sadzikowski which

indicated that plaintiff was capable of returning to work as of February 10, 1976. However, defendant received subsequent reports from Dr. Lee and Dr. Imperio indicating that plaintiff was unable to work as a result of the accident. The testimony of Mr. Anderson, defendant's claim adjuster, indicated that defendant did not attempt to contact these physicians or in some other way attempt to ascertain the true situation in face of the contradictory reports. We cannot, therefore, conclude that the trial court's finding that defendant's conduct was unreasonable was "clearly erroneous", and so we affirm the trial court's determination that plaintiff was entitled to recover attorney fees.

Next, we must decide whether the trial court erred by basing the amount of attorney fees awarded to the plaintiff on his contingent fee contract with the attorney, where there was no showing of the actual services performed.

The previously quoted statute, MCL 500.3148(1); MSA 24.13148(1), permits the attorney to recover "a reasonable fee for advising and representing a claimant". The statute does not elaborate, and there is no case law construing this provision.

The plaintiff argues that the contingent fee arrangement is per se reasonable under GCR 1963, 928. However, this court rule is strictly limited to cases involving personal injury and wrongful death, and is therefore not applicable to the instant case, which is essentially a contract action.

Absent a legislative pronouncement on determination of reasonableness, we would adhere to the guideline enumerated in *Crawley v Schick,* 48 Mich App 728, 737; 211 NW2d 217 (1973), as follows:

"There is no precise formula for computing the rea-

sonableness of an attorney's fee. However, among the facts to be taken into consideration in determining the reasonableness of a fee include, but are not limited to, the following: (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. See generally 3 Michigan Law & Practice, Attorneys and Counselors, § 44, p 275 and Disciplinary Rule 2-106(B) of the Code of Professional Responsibility and Ethics."

See, also, *Nelson v City of Dearborn,* 340 Mich 544; 66 NW2d 78 (1954). While a contingent fee agreement may be considered as one factor in determining the reasonableness of a fee, it is not by itself determinative.

We therefore vacate the amount awarded as attorney fees and remand the issue to the trial court for a hearing where evidence can be submitted on the elements listed above and a new determination of attorney fees rendered.

The defendant's next contention is that the trial court erred in awarding 12 percent interest on the attorney fees.

MCL 500.3142(3); MSA 24.13142(3) allows recovery of 12 percent interest on overdue personal protection insurance payments. This statute in its entirety provides as follows:

"Sec. 3142. (1) Personal protection insurance benefits are payable as loss accrues.

"(2) Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Any part of the remainder of

the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. For the purpose of calculating the extent to which benefits are overdue, payment shall be treated as made on the date a draft or other valid instrument was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery.

"(3) An overdue payment bears simple interest at the rate of 12% per annum."

In the absence of statute authorizing a special interest payment for attorney fees, the standard judgment interest rate of six percent is applicable. MCL 600.6013; MSA 27A.6013. See *Schwartz v Piper Aircraft Corp,* 90 Mich App 324; 282 NW2d 306 (1979). After redetermining the attorney fee award on remand, the trial court shall limit the interest on the award to six percent.

The final issue on appeal is whether plaintiff is limited in the circuit court action to benefits payable within one year prior to the filing of the complaint, where plaintiff initiated the action in Common Pleas Court and consolidated that action with a circuit court action with the consent of defense counsel.

The no-fault act contains a one-year statute of limitations in MCL 500.3145(1); MSA 24.13145(1) which provides:

"Sec. 3145. (1) An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any

time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. *However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.* The notice of injury required by this subsection may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits therefor, or by someone in his behalf. The notice shall give the name and address of the claimant and indicate in ordinary language the name of the person injured and the time, place and nature of his injury." (Emphasis added.)

We find this issue to be without merit for two reasons. First of all, defendant waived the right to raise the statute of limitations defense by failing to assert it in its answer in the circuit court, GCR 1963, 111.7, or by motion, GCR 1963, 116.1(5).

Second, a statute of limitations is tolled when jurisdiction over the defendant is acquired. MCL 600.5856(2); MSA 27A.5856(2). This tolling provision applies when personal jurisdiction is properly established in a court without subject matter jurisdiction and the matter is then renewed in the proper court. *Kiluma v Wayne State University,* 72 Mich App 446; 250 NW2d 81 (1976). This is especially true when the parties agreed by stipulation to the consolidation of the two actions.

Affirmed in part, reversed in part and remanded for redetermination of the amount to be awarded as attorney fees. We do not retain jurisdiction. No costs.