KELLY, J.
(dissenting). I dissent from the majority opinion reversing the Court of Appeals judgment. I would hold that the Court of Appeals correctly analyzed the issues involved. I also believe that the majority opinion improperly substitutes its judgment for that of the trial court and ignores the deferential standards of review applicable here. I would therefore uphold the trial court’s award of attorney fees and its determination that defendant’s behavior was unreasonable. Finally, I would not overrule Liddell v Detroit Automobile Inter-Ins Exch.[1]
*528 FACTS AND PROCEDURAL HISTORY
In September 2000, plaintiff Hattie Moore’s automobile was struck while she was driving on 1-475 in Genesee County. Plaintiffs right knee was fractured in the accident. She was unable to return to her custodial job. Defendant, plaintiffs no-fault insurer, began paying her work loss benefits and other no-fault benefits in December 2000.
Both before and after the accident, plaintiff received treatment from an orthopedic surgeon, Dr. Norman Walter. She had originally sought treatment from Dr. Walter for osteoarthritis in both knees. Following the accident, Dr. Walter recommended surgery on plaintiffs right knee to repair the injury caused by the accident. At defendant’s request, Dr. Charles Xeller, also an orthopedic surgeon, also examined plaintiff. Dr. Xeller, in his independent medical examination (IME), agreed with the need for surgery. Dr. Walter operated on plaintiffs right knee on January 26, 2001.
Plaintiff remained unable to return to work after the surgery and continued to treat with Dr. Walter. Defendant meanwhile retained Dan Schingeck, a nurse case manager, to explore whether plaintiff could return to work. Schingeck met with Dr. Walter in August 2001. Some time after that meeting, Dr. Walter expressed his opinion that plaintiff would never be able to return to her normal employment. It is unclear, however, whether Dr. Walter formed that opinion because of the injuries plaintiff suffered in the automobile accident or because of plaintiffs osteoarthritis.
Dr. Xeller performed a second IME of plaintiff at defendant’s request on September 25, 2001. This report stated that plaintiff no longer required any treatment for her orthopedic injuries sustained in the accident. The report further concluded that plaintiff had signifi *529 cant osteoarthritic deterioration in both knees that had not been exacerbated by the accident. Dr. Xeller opined that plaintiff could return to restricted work activities.
On the basis of Dr. Xeller’s second IME, defendant terminated plaintiff’s no-fault benefits. Plaintiff then filed a lawsuit seeking first-party no-fault benefits. Plaintiff later added a second lawsuit seeking uninsured motorist benefits from defendant. The cases were tried together before a jury, in June 2005.
The jury awarded plaintiff $42,755 in work loss benefits, $98.71 in penalty interest, and $50,000 in noneconomic losses related to plaintiffs uninsured motorist claim. After judgment was entered, plaintiff filed a motion for attorney fees and costs under MCL 500.3148(1). The trial judge heard oral argument on the motion and ultimately granted it. Following a hearing before another judge, plaintiff was awarded $79,415 in attorney fees and costs.
Defendant appealed only the award of attorney fees and costs. The Court of Appeals affirmed in a divided opinion,[2] and defendant sought leave to appeal in this Court. We scheduled oral argument on the application.[3]
ANALYSIS
A. OVERDUE BENEFITS
Under MCL 500.3148(1), attorney fees may be awarded only (1) “in an action for personal or property protection insurance benefits which are overdue” and (2) when the insurer “unreasonably refused to pay the claim or unreasonably delayed in making proper payment.” The jury’s finding that benefits were “overdue” *530 will be upheld if “there is an interpretation of the evidence that provides a logical explanation for the findings of the jury.”[4] In this case, the majority upholds the jury’s finding that some benefits were overdue. However, it then extrapolates from the amount of penalty interest awarded that “the jury declined to award penalty interest on the $42,755 in unpaid work loss benefits that it awarded plaintiff.”[5]
Instead, the majority concludes that the jury found “only one week of work loss benefits was overdue. ”[6] The majority then opines (1) that the jury attributed this overdue week of work loss benefits to benefits paid late by defendant to plaintiff before trial to a computer glitch, and (2) “that the $42,755 in work loss benefits was not overdue at the time of the trial.”[7] Therefore, the majority asserts that “the $42,755 in work loss benefits was not overdue under the plain meaning of MCL 500.3142 and MCL 500.3148.”[8]
The majority cannot claim to have insight into the minds of the jurors in this case. Any analysis of the jury’s conclusions must be based on the record.
With that in mind, it should be noted that, the majority fails to reference the parts of the jury verdict form where the jury was specifically asked these questions:
QUESTION NO. 1: Did Hattie Moore sustain work loss arising out of the accidental bodily injury she sustained in the September 27, 2000 motor vehicle accident?
*531 (Work loss consists of loss of income from work the plaintiff would have performed during the first three years after the date of the accident if the plaintiff had not been injured. Work-loss benefits are computed at 85 percent of the plaintiff’s loss of gross income, but they may not exceed the sum of $3,898.00 per 30-day period from October 1, 2000 — September 30, 2001, and, $4,027 per 30-day period from October 1, 2001 — September 30, 2002, and, $4,070 per 30-day period from October 1, 2002 — September 30, 2002 [sic], nor may they be payable beyond three years after the date of the accidental bodily injury.)
A. Answer: Y_(yes or no)
B. If your answer is “yes,” what is the amount of work loss owed, to Hattie Moore (include only work loss not already paid hy defendant)?
Answer: $ 42 K. 755
QUESTION NO. 3: Was payment for any of the expenses or losses to which the [sic] Hattie Moore was entitled overdue?

(Payment for an expense or loss is overdue if it is not paid within 30 days after the defendant receives reasonable proof of the fact and the amount of the claim. An overdue claim bears interest at the rate of 12 percent per annum from the date the expense or loss becomes overdue.)

A. Answer: Y_(yes or no)
B. If your answer is “yes,” what is the amount of interest owed to Hattie Moore on overdue benefits (include only interest not already paid hy the defendant)?
Answer: $ 98.00
The jury verdict form provides an answer to the first inquiry: was payment to which the plaintiff was entitled overdue? The jury answered yes. Therefore, contrary to the majority’s conclusion, the verdict establishes that *532 this lawsuit was “an action for personal or property protection insurance benefits which are overdue.”
Defendant is correct that over $11,000 in penalty interest would have been the appropriate amount of penalty interest had the jury found the entire $42,755 in benefits overdue. Again, however, I would decline to speculate about the reasons for the size of the jury’s award. As the Court of Appeals majority noted, plaintiff filed an “applications of benefits” form with defendant in December 2000 and plaintiffs employer provided employment information indicating plaintiff s wage history. A reasonable jury may have found that those proofs established that some portion of work loss benefits was overdue.[9]
I acknowledge that the majority identifies a logical explanation for the amount of the penalty interest award. Nonetheless, the majority reaches this conclusion by speculating about the jury’s rationale for awarding a dollar amount that neither party suggested was correct. Unlike the majority, I decline to substitute my judgment for that of the jury, which definitively found that some payment to plaintiff was “overdue.”[10]
Finally, the majority’s citation of Beach v State Farm Mut Automobile Ins Co[11] as consistent with its decision here is misplaced. In Beach, the jury awarded no penalty interest to the plaintiff. The trial court right *533 fully concluded that, given that penalty interest was not awarded, the jury must have concluded that the no-fault benefits at issue were not overdue. Also, attorney fees could not be awarded.
Beach is easily distinguishable, as plaintiff noted in her brief, because the Court in Beach had no need to speculate about how or why the jury had awarded penalty interest. The jury in Beach awarded no penalty interest, precluding both a finding that benefits were overdue and an award of attorney fees. In this case, conversely, the majority notes the amount of penalty interest awarded, then makes a series of guesses about the jury’s intent. I would adhere to the clear answer on the jury verdict form: the jury concluded that benefits were overdue.
B. UNREASONABLE REFUSAL OR DELAY
An insurer’s refusal to pay benefits is not unreasonable when it is “the product of a legitimate question of statutory construction, constitutional law, or a bona fide factual uncertainty.”[12] The trial court’s application of that standard to the particular facts of the case is reviewed for clear error.[13] The majority concludes that defendant’s refusal to pay benefits in this case was the product of a legitimate factual uncertainty and therefore was reasonable. In the process, the majority overrules Liddell, supra. In Liddell, the Court of Appeals upheld the trial court’s determination that an insurer acted unreasonably because it did not attempt to contact physicians with conflicting opinions or reconcile contradictory medical reports.[14]
*534 I disagree with the majority and would not overrule Liddell. Moreover, I cannot agree with the majority’s conclusion that the trial court erred as a matter of law in concluding that defendant’s refusal to pay benefits to plaintiff was unreasonable.
In this case, I believe that it was certainly possible that the trial judge determined that no bona fide factual uncertainty existed. Ample evidence exists on the record to support this conclusion. First, defendant did not even attempt to reconcile the competing medical opinions of the IME and plaintiffs doctors. More importantly, defendant did not provide plaintiffs doctors with the results of the IME that conflicted with their medical opinions.
The majority’s declaration that the “plain meaning” of MCL 500.3142(2)[15] and MCL 500.3148(1)[16] provides a *535 basis for overruling Liddell is unavailing. As is apparent from the text of these statutes, they are entirely silent on the circumstances here, where the parties have conflicting medical opinions.[17]
Notably, the statute requires only “reasonable proof” of the plaintiffs claim and the amount of loss sustained in order to make unpaid benefits overdue. Contrary to the majority, I submit that, under the plain meaning of “reasonable proof,” the medical opinion of plaintiffs doctor meets that standard.
A lay dictionary defines “reasonable” as “agreeable to or in accord with reason; logical.”[18] “Proof” is defined as “1. evidence sufficient to establish a thing as true or believable.... 5. (injudicial proceedings) evidence that seems to substantiate or corroborate a charge or allegation.”[19]
*536 In this case, it was not clearly erroneous for the trial judge to conclude that the medical opinion of plaintiffs doctor was sufficiently “logical” to establish plaintiffs claim “as true or believable.” Therefore, the trial judge’s finding that defendant’s refusal to pay benefits was unreasonable under MCL 500.3142(2) does not constitute clear error.
However, even if, after defendant’s doctor performed the IME that yielded a conflicting conclusion, plaintiffs doctor’s opinion no longer sufficed as “reasonable proof” of plaintiffs claim, defendant may not immediately terminate benefits. Rather, an insurer that does not attempt to reconcile credible conflicting medical opinions before terminating benefits acts unreasonably.[20]
At the least, defendant in this case should have alerted plaintiffs treating physicians of the new contradictory opinion. This would have allowed plaintiff an opportunity to submit additional proof to satisfy the “reasonable proof” threshold in MCL 500.3142(2). In my view, an insurer should not be able to create a bona fide factual uncertainty by choosing to reject plaintiffs doctor’s credible opinion and rely solely on its doctor’s “independent medical report.” To allow insurers to terminate benefits on this basis alone contradicts the requirement that the factual uncertainty be “bona fide.”
*537 I further conclude that, even if Liddell is overruled, I would reach the same result because defendant “unreasonably delayed in making proper payment” under MCL 500.3148(1). I would so hold because defendant failed to pay plaintiff monies it knew were owed considering the computer glitch that had delayed payment.
Defendant conceded that the payment covering December 2000 to March 2001 was overdue and that it “admittedly owed” plaintiff 12 percent penalty interest for that late payment under MCL 500.3142(3). Defendant’s failure to pay penalty interest that it acknowledged was owed to plaintiff constitutes an unreasonable delay in making “proper payment” under MCL 500.3148(1). Nothing in the statutory language restricts “proper payment” to overdue benefits.
The Legislature’s decision to allow attorney fee awards where “the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment” demonstrates a preference that plaintiffs recover attorney fees in the following circumstances: (1) if insurers unreasonably refuse to pay a claim at all, (2) if they unreasonably delay in paying the claim, or (3) if they unreasonably delay in paying the proper amount of the claim. Here, because defendant conceded that the penalty interest was owed on the overdue payment, it was unreasonable for it not to pay plaintiff the proper amount of that claim. The proper amount was the overdue benefits plus the 12 percent penalty interest.
I therefore conclude that the trial judge did not clearly err by holding that defendant’s refusal to pay benefits was unreasonable.
C. ATTORNEY FEES
Because I believe that the trial court did not clearly err by concluding that (1) some benefits were overdue *538 and (2) defendant’s refusal to pay the claim was unreasonable, I further conclude that the trial court did not abuse its discretion in awarding plaintiff $79,415 in attorney fees. I also see no merit in defendant’s argument that, even if plaintiff is entitled to attorney fees, she may recover only the portion directly attributable to securing overdue benefits.
In Cole v Detroit Automobile Inter-Ins Exch,[21] the defendant asserted that the trial court should have based its claim for attorney fees on the portion of time the attorney expended in pursuit of the unreasonably denied claim. The Court of Appeals rejected this position. Defendant here rejects Cole and relies on Proudfoot v State Farm Mut Ins Co[22] arguing that Proudfoot supports its argument and effectively overruled Cole.
This Court in Proudfoot reversed an award of attorney fees for benefits that were not yet overdue because they had not yet been incurred. Defendant argues that the Court of Appeals in this case incorrectly distinguished Proudfoot because the benefits at issue there had not yet been incurred, whereas the benefits at issue here were incurred.
However, as the Court of Appeals majority in this case held, there is no support for defendant’s position in the plain language of the statute. The critical inquiry when determining whether attorney fees may be awarded is whether the plaintiff is maintaining “an action for personal or property protection insurance benefits which are overdue.”[23]
*539 If at least some of the benefits are found to be overdue, the lawsuit constitutes “an action for personal or property insurance benefits which are overdue” under MCL 500.3148(1). Under these circumstances, a plaintiff is entitled to an award of attorney fees. Here, the trial judge’s award of the entire amount of attorney fees requested by plaintiff was not outside the range of principled outcomes because the jury found that benefits were overdue. Thus, the trial judge did not abuse his discretion.
D. PUBLIC POLICY AND THE NO-FAULT ACT
Finally, I note that my dissent is consistent with the purpose of the no-fault act.[24] The majority’s opinion, by contrast, undermines the Legislature’s intent of providing injured parties adequate and prompt reparation from insurers. I fear that the majority opinion provides further opportunity for insurers to abruptly deny claims by holding plaintiffs to a higher standard than the “reasonable proof” requirement of MCL 500.3142(2).
CONCLUSION
I dissent from the majority’s decision to reverse the trial court’s award of attorney fees to plaintiff. The Court of Appeals decision should be affirmed.
WEAVER, J., concurred with KELLY, J.

 Liddell v Detroit Automobile Inter-Ins Exch, 102 Mich App 636; 302 NW2d 260 (1981).

 Moore v Secura Ins, 276 Mich App 195; 741 NW2d 38 (2007).

 Moore v Secura Ins, 482 Mich 883 (2008).

 Granger v Fruehauf Corp, 429 Mich 1, 7; 412 NW2d 199 (1987).

 Ante at 519-520.

 Ante at 519.

 Ante at 518, 520. Because the majority makes this logical leap on the basis of speculation about the jury’s conclusions, I reject it from the outset.

 Ante at 520.

 Oddly, the majority asserts that it is “uphold[ing]” the jury’s verdict. But, contrary to the majority’s assertion, nowhere in the record is it apparent that “the jury decided that only one week of work loss benefits was overdue.” Ante at 519. Rather, the majority arrives at this conclusion only after a series of speculative remarks about what the jury “may have concluded” in arriving at its verdict.

 As the Court of Appeals majority noted, “[t]he jury is the finder of fact, and we will not second-guess it.” Moore, supra at 202.

 Beach v State Farm Mut Automobile Ins Co, 216 Mich App 612; 550 NW2d 580 (1996).

 Gobler v Auto-Owners Ins Co, 428 Mich 51, 66; 404 NW2d 199 (1987).

 Ross v Auto Club Group, 481 Mich 1, 7; 748 NW2d 552 (2008).

 “The testimony... indicated that defendant did not attempt to contact these physicians or in some other way attempt to ascertain the true situation in face of the contradictory reports.” Liddell, supra at 651.

 MCL 500.3142 provides:
(1) Personal protection insurance benefits are payable as loss accrues.
(2) Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. For the purpose of calculating the extent to which benefits are overdue, payment shall be treated as made on the date a draft or other valid instrument was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery.
(3) An overdue payment bears simple interest at the rate of 12% per annum.

 MCL 500.3148 provides, in relevant part:
(1) An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protec *535 tion insurance benefits which are overdue. The attorney’s fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

 The majority rejects Liddell because “[n]othing in the plain language of MCL 500.3148(1) . . . requires an insurer to reconcile conflicting medical opinions.” Ante at 521. This argument makes little sense given that no language in either MCL 500.3142 or 500.3148(1) requires an insurer to do anything other than pay benefits within 30 days of proof from the claimant. Otherwise, the benefits are deemed “overdue” and the insurer is liable for attorney fees under § 3148(1). Aside from the term “reasonable proof,” nothing in either statute discusses evidentiary burdens, offers any guidance for what constitutes “reasonable proof,” or provides any edification on the issues before us in this case. In fact, it is the majority that writes words into the statute by requiring claimants to provide more than “reasonable proof” when there is conflicting evidence regarding the cause of claimant’s injuries. This outcome is startling given the majority’s oft-repeated mantra that unambiguous statutes must be enforced as written. See, e.g., Koontz v Ameritech Services, Inc, 466 Mich 304, 312; 645 NW2d 34 (2002).

 Random House Webster’s College Dictionary (2001).

 Id.

 I recognize that the majority criticizes this view for supposedly “impos[ing] additional duties on insurers beyond those duties already established in Michigan’s no-fault insurance statutes.” Ante at 521. However, as stated previously, I believe this requirement is consistent with the plain meaning of “reasonable proof.” Moreover, I note that in practice, this requirement puts insurers on notice that immediately terminating benefits in the face of contradictory medical information, without any further action, is probably “unreasonable.” By contrast, the majority’s rule does not impose such a requirement but leaves an insurer to “act[] at its own risk in terminating benefits in the face of conflicting medical reports.” Ante at 522. It seems to me that the majoriiy’s analysis leaves insurers twisting in the wind.

 Cole v Detroit Automobile Inter-Ins Exch, 137 Mich App 603, 613-614; 357 NW2d 898 (1984).

 Proudfoot v State Farm Mut Ins Co, 469 Mich 476; 673 NW2d 739 (2003).

 MCL 500.3148(1).

 See, e.g., Shavers v Attorney General, 402 Mich 554, 578-579; 267 NW2d 72 (1978), which observed that the “goal of the no-fault insurance system [is] to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses.”