McCARTHY v AUTO CLUB INSURANCE ASSOCIATION

Docket No. 152272. Submitted August 1, 1994, at Grand Rapids. Decided December 19, 1994, at 9:25 A.M. Leave to appeal sought.

Gwen M. McCarthy brought an action in the 10th District Court against Auto Club Insurance Association, seeking medical, work loss, and replacement services expenses, as well as $4,950 as an allowable expense for future plastic surgery, for injuries sustained in an automobile accident. The claim, except with regard to the expense for future plastic surgery, was submitted to mediation. The plaintiff accepted the mediation evaluation and the defendant rejected it. Following a jury trial where the jury awarded the plaintiff nothing with regard to her claims for medical, work loss, and replacement services expenses, but awarded her $4,950 as an allowable expense for future plastic surgery, when incurred, the court, Franklin K. Line, Jr., J., awarded costs and attorney fees to the plaintiff. The defendant appealed and the Calhoun Circuit Court, Conrad J. Sindt, J., affirmed. The defendant appealed by leave granted.

The Court of Appeals *held:*

1. The trial court erred in awarding attorney fees under MCR 2.403(0). Because the jury awarded the plaintiff nothing with regard to her claims that had been submitted to mediation, the plaintiff was not entitled under MCR 2.403(0) to mediation sanctions for prevailing in the trial court on the claim that was not submitted to mediation. The court also erred in awarding costs and attorney fees under the court rule because the court, in determining whether the judgment was more than ten percent more than the mediation award, improperly considered the award of $4,950 for future plastic surgery expenses, expenses that have not yet been incurred and do not constitute a money judgment.

2. The trial court clearly erred in awarding costs and attorney fees under § 3148(1) of the no-fault insurance act, MCL

REFERENCES

Am Jur 2d, Costs § 24.

See ALR Index under Costs of Actions; Insurance and Insurance Companies.

500.3148(1); MSA 24.13148(1). A legitimate and bona fide question of factual uncertainty existed with regard to the necessity of a given medical expense, the plastic surgery. The defendant reasonably was entitled to rely on the plaintiff's own treating physician in concluding that plastic surgery was not reasonably necessary, thus giving rise to a legitimate or bona fide question of factual uncertainty regarding the necessity of such surgery.

Reversed.

Marilyn Kelly, J., dissenting, stated that the award of costs and attorney fees should be affirmed. The trial court's finding that the defendant's refusal to pay the requested no-fault insurance benefits was unreasonable under MCL 500.3148(1); MSA 24.13148(1) was not clearly erroneous. There was evidence on the record to support the trial court's decision to award attorney fees, and MCR 2.613(C) and the clearly erroneous standard of review require deference to the trial court's decision.

1. Judgments — Mediation — Costs — Attorney Fees.

A party who rejects a mediation award must pay the opposing party's actual costs, including attorney fees, unless the rejecting party improves its position at trial by receiving a jury award that exceeds the mediation award by more than ten percent; a rejecting party that does not improve its position at trial with regard to the issues submitted to arbitration but succeeds at trial by receiving an award that exceeds the mediation award by more than ten percent with regard to an issue that was not submitted to mediation is not entitled to mediation sanctions (MCR 2.403[0]).

2. Judgments — Mediation — Awards for Future Expenses.

A court determining whether a party who rejected a mediation award has improved its position at trial by receiving a jury award that exceeds the mediation award by more than ten percent, therefore entitling the rejecting party to an award of actual costs, including attorney fees, may not consider any part of the jury award that is an award for expenses that have not yet been incurred because such an award does not constitute a money judgment (MCR 2.403[0]).

3. Insurance — No-Fault — Delay in Payment — Costs — Attorney Fees.

A no-fault insurer's unreasonable refusal or delay in the payment of personal or property insurance benefits may provide the basis for an award of costs, including reasonable attorney fees, to the insured; a refusal or delay in payment by an insurer is

not unreasonable where it is the product of a legitimate question of statutory construction, constitutional law, or a bona fide factual uncertainty; a trial court's finding of unreasonable refusal or delay will not be reversed on appeal unless it is clearly erroneous (MCL 500.3148[1]; MSA 24.13148[1]).

*Louis A. Prigioniero* and *Curtis F. Hicks,* for the plaintiff.

*Sullivan, Hamilton, Schulz, Kreter & Toth* (by *Bert W. Schulz*) (*Gross & Nemeth,* by *James G. Gross* and *Paul L. Kaliszewski,* of Counsel), for the defendant.

Before: Hood, P.J., and Marilyn Kelly and J. L. Martlew,* JJ.

Hood, P.J. Defendant appeals by leave granted from a circuit court decision affirming a district court's award to plaintiff of costs and attorney fees of $13,317.39, both as mediation sanctions, MCR 2.403(O), and as a penalty for unreasonably refusing to pay no-fault insurance benefits, MCL 500.3148; MSA 24.13148. We reverse.

This case arose from injuries sustained by plaintiff while she was a passenger in an automobile involved in a collision. Her head and face struck the side passenger window, breaking the window and causing multiple lacerations to her face.

Plaintiff eventually sued defendant, claiming medical, work loss, and replacement services expenses, as well as $4,950 as an allowable expense for future plastic surgery. Evidence at trial showed that defendant had paid medical bills for plaintiff in the amount of $3,310.91, but had not paid some bills because plaintiff never submitted required documentation.

The testimony at trial also showed that Dr.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Chauncey Hipps, a plastic surgeon to whom plaintiff was referred by her attorney, examined plaintiff once and opined that reconstructive surgery could be performed for approximately $4,900. Testimony also indicated that following the automobile accident, plaintiff treated regularly with Dr. Margaret Skiles, the plastic surgeon who originally had sutured her facial lacerations. On February 9, 1988, five days after the accident, Dr. Skiles observed some swelling of plaintiff's lower eyelid, which was not unusual. On February 11 and February 15, 1988, Dr. Skiles removed plaintiff's sutures, at which point plaintiff was healing "very nicely," according to Dr. Skiles. On March 7, 1988, Dr. Skiles discussed the possibility of future reconstructive or plastic surgery, but told plaintiff that any determination regarding whether such surgery would be of any benefit would have to wait from nine months to a year to see how plaintiff healed. During visits on April 21, 1988, April 28, 1988, and July 18, 1988, Dr. Skiles removed small slivers of glass from the area of plaintiff's eye, as well as a variety of inclusion cysts. In August 1988, Dr. Skiles indicated that plaintiff was "healing very nicely with no problems." Dr. Skiles saw plaintiff again for visits in February and March 1989; she removed a piece of glass during the February visit. After that, Dr. Skiles did not see plaintiff again until September 11, 1989, at which point there was a lump in plaintiff's eyelid. On October 3, 1989, Dr. Skiles removed a small cyst that was causing the lump. Plaintiff saw Dr. Skiles for two follow-up visits on October 12 and October 26, 1989. Plaintiff thereafter missed an appointment for March 1, 1990, and Dr. Skiles did not see her again.

Dr. Skiles testified at trial that reconstructive or plastic surgery can alter or camouflage scarring

caused by lacerations, but cannot erase the scarring totally. She further stated that it is necessary to wait and see how the healing process goes, which takes from nine months to a year, before determining whether reconstructive or plastic surgery will be successful in reducing any scarring. Although Dr. Skiles stated that plaintiff had healed a little faster than normal, she also stated that any determination regarding the necessity of reconstructive or plastic surgery would have been premature in August 1988. It was Dr. Skiles' opinion that, in plaintiff's case, plaintiff had healed as well as she could hope for and that reconstructive or plastic surgery would not offer "any measure of significant improvement of any of [plaintiff's] facial scars." According to Dr. Skiles, plaintiff initially appeared interested in the prospect of plastic surgery, but became disinterested thereafter, apparently because she realized it would not change her appearance that much.

Following a jury trial, a district court jury, using a special verdict form, awarded plaintiff nothing with regard to her claims for allowable medical, work loss, and replacement services expenses, but awarded her $4,950 as an allowable expense for future plastic surgery. Upon motion by plaintiff, the trial court awarded costs and attorney fees to plaintiff. The court stated:

> This Court finds that Defendant unreasonably failed to make proper investigation into Plaintiff's medical needs and Defendant unreasonably refused to pay Plaintiff's claim to have corrective plastic surgery.

Defendant appealed, the circuit court affirmed, and this appeal followed.

Generally, attorney fees are not recoverable as

an element of costs or damages unless expressly allowed by statute, court rule, or judicial exception. *Brooks v Rose,* 191 Mich App 565, 574-575; 478 NW2d 731 (1991). Here, the trial court awarded attorney fees under both MCR 2.403(O) (mediation sanctions) and MCL 500.3148(1); MSA 24.13148(1) (the no-fault act's attorney fees provision). Both awards were erroneous.

Under MCR 2.403(O), a rejecting party must pay the opposing party's actual costs, which includes attorney fees, unless the rejecting party improves its position with regard to the mediation award by more than ten percent. Here, the jury awarded plaintiff nothing with regard to each of her claims that had been submitted to mediation. The only claim on which plaintiff prevailed at trial was that involving future plastic surgery, and that claim was never submitted to mediation. It necessarily follows that plaintiff was not entitled to mediation sanctions for prevailing in the trial court on the claims submitted to mediation, because she did not prevail on those claims in the trial court.

More importantly, the $4,950 awarded to plaintiff for future plastic surgery was in the nature of a declaratory judgment, which provided that defendant would be liable for that amount "when the same have been incurred by plaintiff." In a similar case, this Court stated in *Kondratek v Auto Club Ins Ass'n,* 163 Mich App 634, 639; 414 NW2d 903 (1987):

A rejecting defendant may be assessed attorney fees and costs under MCR 2.403(O), unless he improves his position on the mediation award by more than ten percent. Here, in calculating the amount of the judgment recovered by plaintiff, the trial court included the $6,490 future expenses contained in its declaratory judgment. We find such an inclusion to be improper. These expenses

have not yet been incurred, do not constitute a money judgment, and may vary in amount when and if they are actually incurred. Absent inclusion of the $6,490, the judgment is more than ten percent below the mediation award. Therefore, the trial court erred in awarding plaintiff attorney fees under the mediation court rule.

Here, absent inclusion of the $4,950 for future plastic surgery, the judgment is less than the mediation award. Therefore, the trial court erred in awarding costs and attorney fees under the mediation court rule.

The trial court also erred in awarding costs under the no-fault act. MCL 500.3148(1); MSA 24.13148(1) provides:

An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, *if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.*

A refusal or delay in payment by an insurer will not be found unreasonable within the meaning of § 3148(1) where the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or a bona fide factual uncertainty. *Gobler v Auto-Owners Ins Co,* 428 Mich 51, 66; 404 NW2d 199 (1987); *United Southern Assurance Co v Aetna Life & Casualty Ins Co,* 189 Mich App 485; 474 NW2d 131 (1991). A trial court's finding of unreasonable refusal or delay will not be reversed on appeal unless it is clearly erroneous. *Id.*

Plaintiff argued in the trial court that defen-

dant's refusal to pay for the cost of plastic surgery was unreasonable because, following Dr. Hipps' report, which indicated that plastic surgery could improve the appearance of some of plaintiff's scars, defendant never sought either a second opinion or an evaluation by an independent medical examiner. We disagree.

In *Thomson v DAIIE*, 133 Mich App 375; 350 NW2d 261 (1984), the plaintiff, following treatment by an orthopedic surgeon, began treating with a chiropractor. After several treatments, the defendant had the plaintiff examined by another orthopedic surgeon, who concluded that the plaintiff had no objective symptomatology. The defendant thereafter declined to pay for further chiropractic treatment. The trial court found that the defendant's refusal to pay for further chiropractic treatment was unreasonable, reasoning that the defendant should have obtained the opinion of another chiropractor before terminating benefits. This Court reversed, finding that "a legitimate or bona fide question of factual uncertainty" existed, *id.*, p 383, given that the orthopedic surgeon, who was qualified to render an opinion regarding the need for further chiropractic treatment, had contraindicated the need for further chiropractic treatment.

We find that this case presents an even stronger situation for finding that a legitimate or bona fide question of factual uncertainty existed with regard to the necessity of a given medical expense. Although defendant acknowledges that it did not obtain the opinion of an independent medical examiner after Dr. Hipps issued his report indicating possible benefits from plastic surgery, this was because plaintiff's own treating physician, Dr. Skiles, was of the opinion that plaintiff's scars would not be improved by plastic surgery. Indeed, whereas Dr. Hipps examined plaintiff only once,

Dr. Skiles treated plaintiff on a regular basis, both before Dr. Hipps' examination and then for more than a year thereafter. Moreover, Dr. Hipps' examination occurred just six months after the automobile accident, which, according to Dr. Skiles, was too early to adequately evaluate the necessity or likelihood of success of any plastic surgery.

Here, in awarding attorney fees under § 3148, the trial court noted that the jury had determined that defendant should be responsible for the cost of plastic surgery. However, the scope of inquiry under § 3148 is not whether the insurer ultimately is held responsible for a given expense, but whether its initial refusal to pay the expense was unreasonable. Defendant reasonably was entitled to rely on plaintiff's own treating physician in concluding that plastic surgery was not reasonably necessary, thus giving rise to a legitimate or bona fide question of factual uncertainty. This is especially so because the record indicates that an evaluation regarding the necessity of plastic surgery must ordinarily be made after observing a patient's healing process over a period of time. Dr. Skiles, being plaintiff's treating physician, was in a superior position to make such an assessment, whereas Dr. Hipps examined plaintiff only once, just six months after the accident.

We therefore conclude that a legitimate or bona fide question of factual uncertainty existed and, therefore, the trial court also clearly erred in awarding attorney fees under § 3148 of the no-fault act.

Reversed.

J. L. Martlew, J., concurred.

Marilyn Kelly, J. *(dissenting)*. I respectfully dissent. I would affirm the trial court's decision to

award plaintiff costs and attorney fees. MCL 500.3148(1); MSA 24.13148(1).

Our Supreme Court has ruled that an insurer's refusal to pay is reasonable under § 3148(1) when caused by a legitimate question of statutory construction, constitutional law or bona fide factual uncertainty. *Gobler v Auto-Owners Ins Co,* 428 Mich 51, 66; 404 NW2d 199 (1987). However, our Court has also concluded that we will not reverse on appeal a trial court's finding of unreasonable refusal unless it is clearly erroneous. MCR 2.613(C); *United Southern Assurance Co v Aetna. Life & Casualty Ins Co,* 189 Mich App 485; 474 NW2d 131 (1991).

A finding of fact is not clearly erroneous unless there is no evidence to support it or the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed. *Townsend v Brown Corp of Ionia, Inc,* 206 Mich App 257, 263; 521 NW2d 16 (1994). In conducting a review under this standard, our Court affords great deference to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. *Id.,* p 264.

Before 1991, when faced with the question of whether a factual dispute permitted an insurance defendant to avoid paying for medical care, various panels of our Court reached different results. *Thomson v DAIIE,*[1] cited in the majority opinion, represents a possible outcome of such disputes. It is not controlling authority, although the majority treats it as such. Moreover, I would postulate that, in *Thomson,* the Court engaged in de novo review rather than review under the clearly erroneous standard. The analysis ignores the proper degree of deference which should have been given to the trial judge's determination.

---

[1] *Thomson v DAIIE,* 133 Mich App 375; 350 NW2d 261 (1984).

Other cases from the same period more accurately represent review under the clearly erroneous standard. For example, in *Liddell v DAIIE*,[2] one physician concluded that the plaintiff was fit to return to work while two others indicated he could not. Testimony of a claims adjustor indicated that the defendant did not attempt to ascertain the true situation in the face of contradictory reports. Our Court concluded that the trial court's finding that defendant's conduct was unreasonable was not "clearly erroneous" and upheld the award of attorney fees.

In a second case, decided after *Thomson*, our Court again decided that the trial court's determination that plaintiff was entitled to attorney fees was not "clearly erroneous." *Nelson v DAIIE*, 137 Mich App 226, 232-233; 359 NW2d 536 (1984). There, the insurer stopped payment for medical treatment when the plaintiff changed physicians. When the former learned that the latter planned to change physicians, but before the change occurred, it asked her to make a final visit to the first physician. She made a final appointment. The physician summarized her condition but did not comment on the reasonableness of further treatment. The insurer made no further inquiries in this regard. Our Court concluded that the trial court's finding that the delay was unreasonable was supported by evidence on the record and not clearly erroneous. It upheld the award of attorney fees. *Id.,* p 233.

In the case before us, it was uncontested that plaintiff received serious facial injuries in an auto accident. They required approximately fifty stitches. Two physicians, plaintiff's regular plastic surgeon and a plastic surgeon whom plaintiff con-

---

[2] *Liddell v DAIIE,* 102 Mich App 636; 302 NW2d 260 (1981).

sulted, held differing views on whether further plastic surgery would improve her appearance. Defendant did not seek a second medical opinion but adopted the one more favorable to it. Defendant then asserted that a question of fact existed which legitimized its refusal to pay.

I believe that defendant's decision to deny payment for medical benefits without ascertaining the true situation, given contradictory reports, makes this case similar to *Nelson, supra,* and *Liddell, supra.* Defendant's assertion that a legitimate factual dispute made its refusal to pay reasonable simply is not persuasive. Under the majority's holding, whenever one of several physicians concludes that additional treatment is not required, the insurer will be entitled to refuse further payment and await the courts' resolution. Such a result is contrary to the underlying purpose and policy of no-fault auto insurance.

Moreover, I am unable to conclude that there was no evidence in the record to support the trial judge's decision to award attorney fees. The judge was better able to view plaintiff's injuries and evaluate the credibility of the witnesses. Such evaluations should and must play a critical role in determining whether an insurer's refusal to pay legitimate medical expenses is reasonable. I believe MCR 2.613(C) and the definition of the clearly erroneous standard of review set out above require us to defer to his decision.

I would affirm the award of attorney fees and costs.