**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED DECEMBER 30, 2008

HATTIE MOORE and JAMES MOORE,

Plaintiffs-Appellees,

v                                                          No. 135028

SECURA INSURANCE,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH (except CAVANAGH, J.).

CORRIGAN, J.

In this case, we consider the assessment of attorney fees for "overdue" benefits under Michigan's no-fault insurance statutes. MCL 500.3101 *et seq*.[1]

---

[1] The relevant statutory provisions of MCL 500.3101 *et seq*. provide:

MCL 500.3142:

(1) Personal protection insurance benefits are payable as loss accrues.

(2) Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days

Under these statutes, personal protection insurance benefits become "overdue" when an insurer fails to pay "within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). "An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal . . . protection insurance benefits which are overdue." MCL 500.3148(1). Moreover, "the attorney's fee shall be a charge against the insurer . . . if the court finds that the insurer unreasonably refused to pay the claim

after the proof is received by the insurer. For the purpose of calculating the extent to which benefits are overdue, payment shall be treated as made on the date a draft or other valid instrument was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery.

(3) An overdue payment bears simple interest at the rate of 12% per annum.

MCL 500.3148:

(1) An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

(2) An insurer may be allowed by a court an award of a reasonable sum against a claimant as an attorney's fee for the insurer's attorney in defense against a claim that was in some respect fraudulent or so excessive as to have no reasonable foundation. To the extent that personal or property protection insurance benefits are then due or thereafter come due to the claimant because of loss resulting from the injury on which the claim is based, such a fee may be treated as an offset against such benefits; also, judgment may be entered against the claimant for any amount of a fee awarded against him and not offset in this way or otherwise paid.

2

or unreasonably delayed in making proper payment." *Id.* Therefore, whether a claimant's benefits qualify as overdue and whether an insurer unreasonably refused to pay or unreasonably delayed in making payment determine if a claimant's attorney may receive attorney fees.

In this case, a jury awarded plaintiff $50,000 in noneconomic damages and $42,755 in unpaid work loss benefits after defendant insurer stopped paying personal protection insurance benefits. The jury also awarded $98.71 in penalty interest for overdue work loss benefits. The trial court granted plaintiff's motion for attorney fees and costs, and the Court of Appeals affirmed.

Because the Court of Appeals erred in its interpretation of MCL 500.3142 and MCL 500.3148, we reverse. Because the jury awarded plaintiff only $98.71 in penalty interest and failed to award penalty interest on the $42,755 awarded in unpaid work loss benefits, we conclude that those benefits do not qualify as overdue pursuant to MCL 500.3124(2). We also conclude that the discontinuation of plaintiff's benefits was reasonable under MCL 500.3148(1). Because plaintiff offered no additional reasons to support the unreasonableness of defendant's refusal to pay benefits, plaintiff is not entitled to attorney fees. Moreover, we reject the Court of Appeals erroneous statement that an insurer's initial refusal to pay no-fault insurance benefits can be deemed unreasonable even though it is later determined that the insurer was not required to pay those benefits.

3

## I. FACTS AND PROCEDURAL HISTORY

On September 27, 2000, a pickup truck struck the passenger side of plaintiff Hattie Moore's automobile while she was driving on I-475 in Genesee County. Because of the accident, plaintiff fractured her right knee, causing a bone chip. Before the accident, plaintiff had suffered from osteoarthritis in both knees, and she had been treated by an orthopedic surgeon, Dr. Norman Walter. According to Dr. Walter, in November 1999, 10 months before the accident, he discussed knee replacement surgery and injection treatments with plaintiff.

After the accident, plaintiff could not return to her regular employment as a custodian. Defendant began paying plaintiff work loss and other no-fault benefits in December 2000. Defendant first paid plaintiff in December 2000. Because of a computer glitch, however, defendant did not make its next payment to plaintiff until March 2001. Before the trial, defendant rectified its error, paying plaintiff the omitted payments as well as the 12 percent penalty interest that defendant owed. Dr. Walter recommended surgery on plaintiff's right knee to repair the injury caused by the accident. On January 22, 2001, Dr. Charles Xeller, a second orthopedic surgeon, performed an independent medical evaluation (IME) of plaintiff at defendant's request. Dr. Xeller agreed that plaintiff's right knee required surgery, which Dr. Walter performed on January 26, 2001.

Following surgery, plaintiff remained off work and continued treatment with Dr. Walter. In March 2001, defendant retained Dan Schingeck, a nurse case

4

manager, to evaluate whether plaintiff could return to work. Schingeck met with Dr. Walter on August 30, 2001. After their meeting, Dr. Walter opined that plaintiff would never be able to return to her normal employment as a custodian. Dr. Walter's records do not reflect whether he attributed plaintiff's inability to work to her accident-related injuries or her preexisting osteoarthritis.

Defendant continued to pay work loss and other no-fault benefits until Dr. Xeller performed a second IME on September 25, 2001. After the second IME, Dr. Xeller prepared a seven page report for defendant. In his report, Dr. Xeller opined that plaintiff did not need further treatment for her orthopedic complaints related to the accident. Rather, he concluded that plaintiff had severe osteoarthritic degeneration in both knees that predated the accident, and that the accident had not exacerbated plaintiff's underlying osteoarthritis. Dr. Xeller determined that plaintiff could return to work with restrictions including, "no climbing, no walking on uneven ground, no kneeling or squatting, limited walking, and no overhead lifting." Additionally, Dr. Xeller opined that plaintiff needed a total left knee replacement and possibly a total right knee replacement in the future.

In November 2001, defendant discontinued plaintiff's no-fault benefits because reasonable proof of plaintiff's claim no longer existed on the basis of Dr. Xeller's report. Plaintiff filed suit, seeking first-party no-fault benefits from

5

defendant. Plaintiff and her husband also filed a second suit seeking uninsured motorist benefits from defendant.

At trial, plaintiff sought approximately $96,000 in work loss benefits, $21,000 for household or replacement services, and more than $11,000 in penalty interest. The jury awarded plaintiff $42,775 in work loss benefits, no damages for household or replacement services, and only $98.71 in penalty interest for overdue payments. Plaintiff filed a postjudgment motion for no-fault attorney fees and costs under MCL 500.3148(1). After a hearing to determine attorney fees and costs, the trial court awarded plaintiff the full amount that she requested, $79,415.

Defendant appealed both the trial court's decision to grant attorney fees and costs and the amount of attorney fees and costs awarded to plaintiff. In a divided opinion, the Court of Appeals affirmed.[2] In a divided opinion, the Court of Appeals affirmed the trial court's award of $79,415 in attorney fees and costs.[3] Relying on a definition of unreasonableness from *Liddell v Detroit Automobile Inter-Ins Exch*, 102 Mich App 636, 650; 302 NW2d 260 (1981), the Court concluded that "the trial court properly found the denial of benefits here unreasonable where defendant made no inquiry beyond the opinion of its own IME doctor."[4] The Court held that the defendant insurer owed overdue benefits

---

[2] *Moore v Secura Ins*, 276 Mich App 195; 741 NW2d 38 (2007).

[3] *Moore*, *supra*.

[4] *Moore*, *supra* at 202.

6

and that the plaintiff satisfied conditions for attorney fees when "it was determined below that the denial of the benefits was unreasonable, and the jury found at least some of the benefit payments overdue."[5] The Court held that the trial court did not abuse its discretion "in awarding plaintiff $79,415 in attorney fees when the jury awarded plaintiff only $98.71 in penalty interest" because an insurer may "unreasonably refuse to pay benefits even if the insurer is later deemed not liable for them."[6]

Court of Appeals Judge Kurtis T. Wilder dissented.[7] Judge Wilder reasoned that plaintiff's benefits were not overdue and, therefore, plaintiff had no claim for attorney fees "[u]nder the unambiguous language of MCL 500.3148(1)."[8] Moreover, Judge Wilder concluded that, given the jury's award of $98.71 in penalty interest, it necessarily determined that defendant unreasonably had delayed payment of only one week of work loss benefits.[9] Judge Wilder further stated that, "[i]n my view, *no* part of the $79,415 in attorney fees and costs in this case was attributable to collecting the $822.52 overdue benefit, because that overdue benefit was paid long before litigation."[10] Therefore, Judge Wilder would

---

[5] *Id.*

[6] *Id*. at 203-204.

[7] *Id*. at 205.

[8] *Id*. at 208-209.

[9] *Id*. at 209.

[10] *Id*. at 214.

7

have held "that the trial court erred as a matter of law in granting attorney fees, because the jury did not award overdue benefits to the plaintiff."[11] Defendant then applied for leave to appeal to this Court. We scheduled oral argument on the application and directed the parties to address:

> (1) whether the benefits at issue were "overdue," MCL 500.3148(1), 500.3142(2); (2) whether defendant "unreasonably refused to pay the claim or unreasonably delayed in making proper payment," MCL 500.3148(1); (3) assuming defendant unreasonably refused to pay, but also assuming that only a portion of the benefits sought and awarded were "overdue," whether MCL 500.3148(1) permits recovery of attorney fees for all benefits sought and recovered; and (4) whether the Court of Appeals erred in suggesting that "it is . . . possible for an insurer to unreasonably refuse to pay benefits even if the insurer is later deemed not liable for them." [*Moore v Secura Ins*, 482 Mich 883 (2008).]

## II. STANDARD OF REVIEW

The Court reviews de novo issues of statutory interpretation. *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). "The trial court's decision about whether the insurer acted reasonably involves a mixed question of law and fact. What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact." *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008). This Court reviews de novo questions of law, but we review findings of fact for clear error. *Id*. "A decision is clearly erroneous when 'the reviewing

---

[11] *Id*. at 215.

court is left with a definite and firm conviction that a mistake has been made.'" *Id.*, quoting *Kitchen v Kitchen*, 474 Mich 654, 661-662; 641 NW2d 245 (2002). Moreover, we review a trial court's award of attorney fees and costs for an abuse of discretion. *Smith v Khouri,* 481 Mich 519, 526; 751 NW2d 472 (2008). An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *Id.*

## III. LEGAL ANALYSIS

### A. Overdue Benefits

"When interpreting statutes, our primary goal is to give effect to the intent of the Legislature." *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 720; 691 NW2d 1 (2005). We review the language of the statute itself and give the words used by the Legislature their common and ordinary meaning. *Id.* "If the statutory language is unambiguous, we must presume that the Legislature intended the meaning it clearly expressed and further construction is neither required nor permitted." *Id.*

MCL 500.3148(1) establishes two prerequisites for the award of attorney fees. First, the benefits must be overdue, meaning "not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). Second, in postjudgment proceedings, the trial court must find that the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." MCL 500.3148(1). Therefore,

9

assigning the words in MCL 500.3142 and MCL 500.3148 their common and ordinary meaning, "attorney fees are payable only on overdue benefits for which the insurer has unreasonably refused to pay or unreasonably delayed in paying." *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 485; 673 NW2d 739 (2003) (emphasis omitted).

In this case, the verdict form instructed jurors to award "12 percent interest per annum from the date that the expense or loss became overdue." In contrast, the trial court's jury instructions simply directed jurors to award 12 percent interest with no indication that the 12 percent interest should be "per annum." Moreover, the trial court specifically instructed the jury that if plaintiff did not provide reasonable proof for her entire claim, then it must award interest for any pro rata portion for which plaintiff did supply reasonable proof. While plaintiff requested more than $11,000 in penalty interest, defendant requested that the jury award plaintiff only $121.50 in penalty interest. Instead of awarding the amount requested by either party, the jury awarded only $98.71 in penalty interest.[12]

The jury's decisions to award plaintiff $42,755 in unpaid work loss benefits, but only $98.71 in penalty interest, seems inconsistent because if the jury had determined that the work loss benefits owed were overdue, then the jury instructions mandated that it award 12 percent penalty interest on the full amount

10

of overdue benefits, as required by MCL 500.3142(3).  This Court will uphold a jury's verdict, however, where "'there is an interpretation of the evidence that provides a logical explanation for the findings of the jury.'"  *Bean v Directions Unlimited, Inc*, 462 Mich 24, 31-32; 609 NW2d 567 (2000), quoting *Granger v Fruehauf Corp*, 429 Mich 1, 7; 412 NW2d 199 (1987).

The jury's conclusion that plaintiff was owed work loss benefits did not also *require* it to conclude that those benefits were overdue.  It may have concluded that the preexisting osteoarthritic degeneration in plaintiff's knees cast doubt on whether defendant had reasonable proof of plaintiff's accident-specific injuries, and, therefore, whether payments were due under MCL 500.3142(2).  The jury also may have concluded that defendant should not be faulted for its computer glitch where plaintiff did not promptly notify defendant about the error.  The jury's award of $98.71 in penalty interest represents exactly 12 percent of one week of plaintiff's work loss benefits, which defendant calculated at $822.52.  Thus, the jury decided that only one week of work loss benefits was overdue.  Because there is an interpretation of the evidence that provides a logical explanation for the jury's verdict, we uphold it.

MCL 500.3148(1) further provides that an attorney may only receive fees for representing a claimant in an action for "benefits which are overdue."  In MCL

---

[12] As Judge Wilder notes in his dissent, $98.71 is 12 percent of $822.52, and $822.52 represents the one week of delayed work loss benefits for which plaintiff

500.3142(2), the Legislature explains that overdue benefits refer to those benefits "not paid within 30 days after an insurer receives *reasonable proof of the fact and of the amount of loss sustained.*" Neither MCL 500.3142(2) nor MCL 500.3148(1) permits the recovery of attorney fees for actions in which a court awarded plaintiff benefits that were reasonably in dispute, or, stated slightly differently, benefits not yet overdue.

In addition to being consistent with Judge Wilder's dissent,[13] our view coincides with another Court of Appeals decision in which a jury refused to award penalty interest because benefits were not overdue under MCL 500.3142. *Beach v State Farm Mut Automobile Ins Co*, 216 Mich App 612; 550 NW2d 580 (1996). In *Beach*, the Court held that a jury's decision that benefits were not overdue for purposes of MCL 500.3142 precluded the trial court from awarding attorney fees pursuant to MCL 500.3148(1) because a plaintiff is entitled to attorney fees only for overdue benefits. *Id*. at 630.

The Court of Appeals erred by failing to follow the unambiguous language of MCL 500.3142 and MCL 500.3148. In this case, despite instructions from the trial court and on the verdict form, the jury declined to award penalty interest on the $42,755 in unpaid work loss benefits that it awarded plaintiff. From its award of $98.71 in penalty interest, we conclude that the jury found that only one week

provided reasonable proof. *Moore*, *supra* at 209.

[13] *Moore*, *supra* at 205-215.

12

of work loss benefits was overdue. Therefore, the jury must have found that the $42,755 in work loss benefits was not overdue under the plain meaning of MCL 500.3142 and MCL 500.3148. Because, as noted above, "'there is an interpretation of the evidence that provides a logical explanation'" for this finding, *Bean*, *supra* at 31, quoting *Granger*, *supra* at 7, we agree with the jury's conclusion that the $42,755 in work loss benefits was not overdue at the time of the trial.

## B. Unreasonable Refusal or Delay

MCL 500.3148(1) provides in relevant part, "[t]he attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer *unreasonably refused to pay the claim* or *unreasonably delayed in making proper payment.*" The Court of Appeals recognized that an insurer's refusal to pay benefits is not unreasonable "'[i]f the insurer's refusal or delay in payment is the product of a legitimate question of statutory construction, constitutional law, or a bona fide factual uncertainty.'"[14] The Court traced its definition of "unreasonableness" to *Liddell*, *supra* at 650, in which the Court affirmed attorney fees under MCL 500.3148 "on the basis of the refusal of the defendant insurer to reconcile the opinion of one doctor that the plaintiff's injuries from an accident no longer precluded him from employment with the

---

[14] *Moore*, *supra* at 199, quoting *Beach*, *supra* at 629.

13

contradictory opinions of the plaintiff's treating physicians."[15] Comparing the facts of this case to the facts of *Liddell*, the Court reasoned, "[h]ere, as in *Liddell*, defendant insurer terminated plaintiff's work loss benefits without attempting to reconcile the opinions of its independent medical examiner and plaintiff's treating physicians." The Court of Appeals concluded, "[u]nder these circumstances, the trial court did not clearly err in finding that defendant unreasonably terminated plaintiff's benefits . . . ."[16]

We reject the Court of Appeals analysis of *Liddell*. In *Liddell*, the Court held that a trial court did not clearly err when it found an insurer's conduct unreasonable where the insurer "did not attempt to contact" physicians with conflicting opinions "or in some other way attempt to ascertain the true situation in the face of contradictory reports."[17] Nothing in the plain language of MCL 500.3148(1), however, requires an insurer to reconcile conflicting medical opinions. Moreover, nothing otherwise implicit in the statute requires an insurer to reconcile competing medical opinions. Therefore, in accordance with the plain language of MCL 500.3148(1), we overrule *Liddell*.

The Court of Appeals erred in affirming the trial court's finding that, because defendant knew that other doctors were involved in plaintiff's case, it was "incumbent upon the carrier to go beyond" defendant's doctor and that the

---

[15] *Moore*, *supra* at 200.

[16] *Id*. at 201.

14

defendant insurer "could have sought further information before exercising the draconian termination of critical benefits for one who is injured."[18] The Court of Appeals misconstrued the plain language of MCL 500.3148(1) and thereby imposed additional duties on insurers beyond those duties already established in Michigan's no-fault insurance statutes. We acknowledge that the trial court's decision about whether an insurer acted reasonably presents a mixed question of law and fact.[19] We hold that the trial court here erred as a matter of law.

The plain language of MCL 500.3101 *et seq.* does not impose an independent duty on insurers to "go beyond" the medical opinion of their physicians and the IMEs that those physicians perform. Instead, "[t]he determinative factor in our inquiry is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable."[20] To determine whether the initial refusal to pay was unreasonable, the trial court must give effect to the unambiguous language of MCL 500.3148(1). MCL 500.3148(1) requires that the trial court engage in a fact-specific inquiry to determine whether "the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment."

---

[17] *Liddell*, *supra* at 651.

[18] *Moore*, *supra* at 200.

[19] *Ross*, *supra* at 7 ("What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact.").

[20] *Id.* at 11.

We conclude that an insurer need not resort to a "tie breaker" to resolve conflicting medical reports, but we note that an insurer acts at its own risk in terminating benefits in the face of conflicting medical reports.[21] Here, however, defendant's decision not to seek out another physician to prepare yet another IME in order to reconcile the conflicting opinions of Dr. Walter and Dr. Xeller was not unreasonable under the fact-specific inquiry mandated by MCL 500.3148. MCL 500.3142(2) provides in relevant part: "[i]f reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after proof is received by the insurer." Under the plain language of the statute, the claimant shoulders the initial burden to supply reasonable proof of her entire claim, or reasonable proof for some portion thereof. When the claimant provides such evidence, the insurer then must evaluate that evidence as well as evidence supplied by the insurer's doctor before making a reasonable decision regarding whether to provide the benefits sought.

We reject the trial court's conclusion that the defendant insurer must "go beyond" defendant's doctor or IME. We hold that the Court of Appeals erred in affirming the trial court's ruling that defendant unreasonably terminated plaintiff's benefits. Under the unambiguous language of MCL 500.3148(1) and MCL

---

[21] *Id.* ("Accordingly, an insurer's refusal or delay places a burden on the insurer to justify its refusal or delay. The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty.")

500.3142(2), defendant's decision to discontinue plaintiff's benefits in light of a legitimate factual uncertainty was reasonable.

### C. Attorney Fees

In *Proudfoot*, *supra* at 485, this Court held that "attorney fees are payable only on overdue benefits for which the insurer has unreasonably refused to pay or unreasonably delayed in paying." (Emphasis omitted.) MCL 500.3148(1) provides in relevant part, "[t]he attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment."

In this case, the jury found that $822.52, or only one week of plaintiff's unpaid work loss benefits, were overdue. Generally, plaintiff's attorney would be entitled to attorney fees incurred to collect those overdue benefits. Here, however, before plaintiff's suit went to trial, defendant already had paid plaintiff $822.52 for one week of work loss benefits and all other payments that defendant owed as a result of the computer glitch. Because plaintiff did not attribute any of the $79,415 that the trial court awarded her in attorney fees and costs to collecting $822.52 in overdue work loss benefits, plaintiff is not entitled to attorney fees.

Moreover, because, as shown above, defendant did not unreasonably refuse to pay work loss benefits, plaintiff is not entitled to attorney fees incurred to collect the $42,755 awarded by the jury. Our review of the lower court record reveals that plaintiff proffered only one reason that defendant's refusal to pay

17

benefits was unreasonable under MCL 500.3148(1). Specifically, during the hearing on plaintiff's motion for attorney fees, plaintiff's counsel argued that defendant unreasonably discontinued benefits solely because of defendant's reliance on the second IME performed by Dr. Xeller. Related to his broader argument, plaintiff's counsel faulted defendant for not sharing Dr. Xeller's IME with plaintiff's other physicians, not asking plaintiff's other physicians if they agreed with Dr. Xeller's second IME, and not educating themselves about osteoarthritis. To further buttress his argument, plaintiff's counsel relied on *Liddell* for the proposition that defendant must reasonably evaluate plaintiff's medical condition.

As previously discussed, however, defendant's reliance on Dr. Xeller's second IME was not unreasonable under the plain language of MCL 500.3148(1). Forcing defendant to "go beyond" what the unambiguous statutory language mandates would effectively require it to shoulder plaintiff's initial burden pursuant to MCL 500.3142(2). Further, this Court already has concluded that the Court of Appeals misconstrued *Liddell* and, therefore, that Court's reading of *Liddell* is inapplicable. Moreover, even if we had not overruled *Liddell* and the case were applicable, we note that defendant here did significantly more than the insurer in that case, including requesting two separate IMEs and hiring a nurse case manager to investigate whether plaintiff could return to work.

Because plaintiff did not attribute any of the $79,415 that the trial court awarded her in attorney fees and costs to collecting the $822.52 in overdue work

18

loss benefits as determined by the jury's penalty interest award, and because there is no evidence in the lower court record that defendant's refusal to pay benefits was unreasonable, plaintiff is not entitled to any attorney fees under MCL 500.3148(1).

### D. Erroneous Statement of Law

The Court of Appeals majority erred by relying on *McCarthy v Auto Club Ins Ass'n*, 208 Mich App 97; 527 NW2d 524 (1994), for the proposition that "[i]t is . . . possible for an insurer to unreasonably refuse to pay benefits even if the insurer is later deemed not liable for them."[22] In actuality, the *McCarthy* Court addressed the inverse proposition, namely, that "the scope of inquiry under [MCL 500.3148] is not whether the insurer ultimately is held responsible for a given expense, but whether its initial refusal to pay the expense was unreasonable." *McCarthy, supra* at 105. Otherwise stated, an insurer's initial refusal to pay benefits under Michigan's no-fault insurance statutes can be deemed reasonable even though it is later determined that the insurer was required to pay those benefits.

We recently affirmed the proposition expressed in *McCarthy* that an insurer's initial refusal to pay no-fault benefits can be deemed reasonable even if it is later determined that the insurer was required to pay those benefits. *Ross*, *supra* at 11. This Court's statement in *Ross* and the Court's statement in *McCarthy*,

---

[22] *Moore*, *supra* at 204, citing *McCarthy*, *supra* at 105.

19

however, do not permit us to assume that the inverse proposition as expressed by the Court of Appeals is similarly correct. Nothing in our jurisprudence suggests that an insurer's initial refusal to pay no-fault insurance benefits can be deemed unreasonable, even though it is later determined that the insurer did not owe those benefits. The Court of Appeals proposition effectively penalizes an insurer for refusing to pay benefits that the insurer had no obligation to pay. In contrast, we conclude that if an insurer does not owe benefits, then benefits cannot be overdue. Therefore, before a court may award attorney fees, benefits must be overdue, and an insurer must have unreasonably refused to pay the claim or delayed in payment.

Accordingly, we reject the Court of Appeals statement that "it is . . . possible for an insurer to unreasonably refuse to pay benefits even if the insurer is later deemed not liable for them." *Moore*, *supra* at 204.

## IV. CONCLUSION

If an insurer's payment does not qualify as overdue, a claimant's attorney may not receive attorney fees under Michigan's no-fault insurance statutes. MCL 500.3101 *et seq*. In this case, the Court of Appeals failed to give effect to the clearly expressed intent of the Legislature in MCL 500.3142 and MCL 500.3148. Because the jury awarded plaintiff only $98.71 in penalty interest and failed to award penalty interest on the $42,755 that it awarded in unpaid work loss benefits, we conclude that those benefits do not qualify as overdue pursuant to MCL 500.3124(2). Moreover, defendant's act of discontinuing plaintiff's benefits did not constitute either an unreasonable refusal to pay or unreasonable delay under

20

MCL 500.3148(1). Because plaintiff offered no additional reasons to support the unreasonableness of defendant's refusal to pay benefits, plaintiff is not entitled to attorney fees. Finally, we reject the Court of Appeals erroneous statement that an insurer's initial refusal to pay no-fault insurance benefits can be deemed unreasonable even though it is later determined that the insurer was not required to pay those benefits.

Accordingly, we reverse the Court of Appeals and remand for further proceedings consistent with our opinion.

Maura D. Corrigan
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

Cavanagh, J., did not participate because of a familial relationship with counsel for Secura Insurance.

21

STATE OF MICHIGAN

SUPREME COURT

HATTIE MOORE and JAMES MOORE,

      Plaintiffs-Appellees,

v                                                                            No. 135028

SECURA INSURANCE, A MUTUAL
COMPANY, a foreign corporation,

      Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

I dissent from the majority opinion reversing the Court of Appeals judgment. I would hold that the Court of Appeals correctly analyzed the issues involved. I also believe that the majority opinion improperly substitutes its judgment for that of the trial court and ignores the deferential standards of review applicable here. I would therefore uphold the trial court's award of attorney fees and its determination that defendant's behavior was unreasonable. Finally, I would not overrule *Liddell v Detroit Automobile Inter-Ins Exch*.[1]

FACTS AND PROCEDURAL HISTORY

In September 2000, plaintiff Hattie Moore's automobile was struck while she was driving on I-475 in Genesee County. Plaintiff's right knee was fractured

_____
[1] *Liddell v Detroit Automobile Inter-Ins Exch*, 102 Mich App 636; 302 NW2d 260 (1981).

in the accident. She was unable to return to her custodial job. Defendant, plaintiff's no-fault insurer, began paying her work loss benefits and other no-fault benefits in December 2000.

Both before and after the accident, plaintiff received treatment from an orthopedic surgeon, Dr. Norman Walter. She had originally sought treatment from Dr. Walter for osteoarthritis in both knees. Following the accident, Dr. Walter recommended surgery on plaintiff's right knee to repair the injury caused by the accident. At defendant's request, Dr. Charles Xeller, also an orthopedic surgeon, also examined plaintiff. Dr. Xeller, in his independent medical examination (IME), agreed with the need for surgery. Dr. Walter operated on plaintiff's right knee on January 26, 2001.

Plaintiff remained unable to return to work after the surgery and continued to treat with Dr. Walter. Defendant meanwhile retained Dan Schingeck, a nurse case manager, to explore whether plaintiff could return to work. Schingeck met with Dr. Walter in August 2001. Some time after that meeting, Dr. Walter expressed his opinion that plaintiff would never be able to return to her normal employment. It is unclear, however, whether Dr. Walter formed that opinion because of the injuries plaintiff suffered in the automobile accident or because of plaintiff's osteoarthritis.

Dr. Xeller performed a second IME of plaintiff at defendant's request on September 25, 2001. This report stated that plaintiff no longer required any treatment for her orthopedic injuries sustained in the accident. The report further

concluded that plaintiff had significant osteoarthritic deterioration in both knees that had not been exacerbated by the accident. Dr. Xeller opined that plaintiff could return to restricted work activities.

On the basis of Dr. Xeller's second IME, defendant terminated plaintiff's no-fault benefits. Plaintiff then filed a lawsuit seeking first-party no-fault benefits. Plaintiff later added a second lawsuit seeking uninsured motorist benefits from defendant. The cases were tried together before a jury, in June 2005.

The jury awarded plaintiff $42,775 in work loss benefits, $98.71 in penalty interest, and $50,000 in noneconomic losses related to plaintiff's uninsured motorist claim. After judgment was entered, plaintiff filed a motion for attorney fees and costs under MCL 500.3148(1). The trial judge heard oral argument on the motion and ultimately granted it. Following a hearing before another judge, plaintiff was awarded $79,415 in attorney fees and costs.

Defendant appealed only the award of attorney fees and costs. The Court of Appeals affirmed in a divided opinion,[2] and defendant sought leave to appeal in this Court. We scheduled oral argument on the application.[3]

---

[2] *Moore v Secura Ins*, 276 Mich App 195; 741 NW2d 38 (2007).

[3] *Moore v Secura Ins*, 482 Mich 883 (2008).

ANALYSIS

A.  Overdue Benefits

Under MCL 500.3148(1), attorney fees may be awarded only (1) "in an action for personal or property protection insurance benefits which are overdue" and (2) when the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment."  The jury's finding that benefits were "overdue" will be upheld if "there is an interpretation of the evidence that provides a logical explanation for the findings of the jury."[4]  In this case, the majority upholds the jury's finding that some benefits were overdue.  However, it then extrapolates from the amount of penalty interest awarded that "the jury declined to award penalty interest on the $42,775 in unpaid work loss benefits that it awarded plaintiff."[5]

Instead, the majority concludes that the jury found "only one week of work loss benefits was overdue."[6]  The majority then opines (1) that the jury attributed this overdue week of work loss benefits to benefits paid late by defendant to plaintiff before trial to a computer glitch, and (2) "that the $42,755 in work loss benefits was not overdue at the time of the trial."[7]  Therefore, the majority asserts

---

[4] *Granger v Fruehauf Corp*, 429 Mich 1, 7; 412 NW2d 199 (1987).

[5] *Ante* at 12.

[6] *Ante* at 11.

[7] *Ante* at 11, 13.  Because the majority makes this logical leap on the basis of speculation about the jury's conclusions, I reject it from the outset.

4

that "the $42,755 in work loss benefits was not overdue under the plain meaning of MCL 500.3142 and MCL 500.3148."[8]

The majority cannot claim to have insight into the minds of the jurors in this case. Any analysis of the jury's conclusions must be based on the record.

With that in mind, it should be noted that, the majority fails to reference the parts of the jury verdict form where the jury was specifically asked these questions:

> QUESTION NO. 1: Did Hattie Moore sustain work loss arising out of the accidental bodily injury she sustained in the September 27, 2000 motor vehicle accident?
>
> *(Work loss consists of loss of income from work the plaintiff would have performed during the first three years after the date of the accident if the plaintiff had not been injured. Work-loss benefits are computed at 85 percent of the plaintiff's loss of gross income, but they may not exceed the sum of $3,898.00 per 30-day period from October 1, 2000 – September 30, 2001, and, $4,027 per 30-day period from October 1, 2001 – September 30, 2002, and, $4,070 per 30-day period from October 1, 2002 – September 30, 2002 [sic], nor may they be payable beyond three years after the date of the accidental bodily injury.)*
>
> A.    Answer:   Y   (yes or no)
>
> B.    If your answer is "yes," what is the amount of work loss owed to Hattie Moore (include only work loss not already paid by defendant)?
>
> Answer:  $  42 K .
>                 755.
>
> * * *

---

[8] *Ante* at 13.

5

QUESTION NO. 3: Was payment for any of the expenses or losses to which the [sic] Hattie Moore was entitled overdue?

*(Payment for an expense or loss is overdue if it is not paid within 30 days after the defendant receives reasonable proof of the fact and the amount of the claim. An overdue claim bears interest at the rate of 12 percent per annum from the date the expense or loss becomes overdue.)*

    A.    Answer:  _Y_  (yes or no)

    B.    If your answer is "yes," what is the amount of interest owed to Hattie Moore on overdue benefits (include only interest not already paid by the defendant)?

    Answer: $ _98.00_

The jury verdict form provides an answer to the first inquiry: was payment to which the plaintiff was entitled overdue? The jury answered yes. Therefore, contrary to the majority's conclusion, the verdict establishes that this lawsuit was "an action for personal or property protection insurance benefits which are overdue."

Defendant is correct that over $11,000 in penalty interest would have been the appropriate amount of penalty interest had the jury found the entire $42,755 in benefits overdue. Again, however, I would decline to speculate about the reasons for the size of the jury's award. As the Court of Appeals majority noted, plaintiff filed an "applications of benefits" form with defendant in December 2000 and plaintiff's employer provided employment information indicating plaintiff's wage

6

history. A reasonable jury may have found that those proofs established that some portion of work loss benefits was overdue.[9]

I acknowledge that the majority identifies a logical explanation for the amount of the penalty interest award. Nonetheless, the majority reaches this conclusion by speculating about the jury's rationale for awarding a dollar amount that neither party suggested was correct. Unlike the majority, I decline to substitute my judgment for that of the jury, which definitively found that some payment to plaintiff was "overdue."[10]

Finally, the majority's citation of *Beach v State Farm Mut Automobile Ins Co*[11] as consistent with its decision here is misplaced. In *Beach*, the jury awarded no penalty interest to the plaintiff. The trial court rightfully concluded that, given that penalty interest was not awarded, the jury must have concluded that the no-fault benefits at issue were not overdue. Also, attorney fees could not be awarded.

*Beach* is easily distinguishable, as plaintiff noted in her brief, because the Court in *Beach* had no need to speculate about how or why the jury had awarded penalty interest. The jury in *Beach* awarded no penalty interest, precluding both a

---

[9] Oddly, the majority asserts that it is "uphold[ing]" the jury's verdict. But, contrary to the majority's assertion, nowhere in the record is it apparent that "the jury decided that only one week of work loss benefits was overdue." *Ante* at 11. Rather, the majority arrives at this conclusion only after a series of speculative remarks about what the jury "may have concluded" in arriving at its verdict.

[10] As the Court of Appeals majority noted, "[t]he jury is the finder of fact, and we will not second-guess it." *Moore*, *supra* at 202.

7

finding that benefits were overdue and an award of attorney fees. In this case, conversely, the majority notes the amount of penalty interest awarded, then makes a series of guesses about the jury's intent. I would adhere to the clear answer on the jury verdict form: the jury concluded that benefits were overdue.

## B. Unreasonable Refusal or Delay

An insurer's refusal to pay benefits is not unreasonable when it is "the product of a legitimate question of statutory construction, constitutional law, or a bona fide factual uncertainty."[12] The trial court's application of that standard to the particular facts of the case is reviewed for clear error.[13] The majority concludes that defendant's refusal to pay benefits in this case was the product of a legitimate factual uncertainty and therefore was reasonable. In the process, the majority overrules *Liddell*, *supra*. In *Liddell*, the Court of Appeals upheld the trial court's determination that an insurer acted unreasonably because it did not attempt to contact physicians with conflicting opinions or reconcile contradictory medical reports.[14]

---

[11] *Beach v State Farm Mut Automobile Ins Co*, 216 Mich App 612; 550 NW2d 580 (1996).

[12] *Gobler v Auto-Owners Ins Co*, 428 Mich 51, 66; 404 NW2d 199 (1987).

[13] *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008).

[14] "The testimony . . . indicated that defendant did not attempt to contact these physicians or in some other way attempt to ascertain the true situation in face of the contradictory reports." *Liddell*, *supra* at 651.

8

I disagree with the majority and would not overrule *Liddell*. Moreover, I cannot agree with the majority's conclusion that the trial court erred as a matter of law in concluding that defendant's refusal to pay benefits to plaintiff was unreasonable.

In this case, I believe that it was certainly possible that the trial judge determined that no bona fide factual uncertainty existed. Ample evidence exists on the record to support this conclusion. First, defendant did not even attempt to reconcile the competing medical opinions of the IME and plaintiff's doctors. More importantly, defendant did not provide plaintiff's doctors with the results of the IME that conflicted with their medical opinions.

The majority's declaration that the "plain meaning" of MCL 500.3142(2)[15] and MCL 500.3148(1)[16] provides a basis for overruling *Liddell* is unavailing. As

---

[15] MCL 500.3142 provides:

(1) Personal protection insurance benefits are payable as loss accrues.

(2) Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. For the purpose of calculating the extent to which benefits are overdue, payment shall be treated as made on the date a draft or other valid instrument was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery.

is apparent from the text of these statutes, they are entirely silent on the circumstances here, where the parties have conflicting medical opinions.[17]

Notably, the statute requires only "reasonable proof" of the plaintiff's claim and the amount of loss sustained in order to make unpaid benefits overdue. Contrary to the majority, I submit that, under the plain meaning of "reasonable proof," the medical opinion of plaintiff's doctor meets that standard.

A lay dictionary defines "reasonable" as "agreeable to or in accord with reason; logical."[18]  "Proof" is defined as "1. evidence sufficient to establish a thing

---

(3) An overdue payment bears simple interest at the rate of 12% per annum.

[16] MCL 500.3148 provides, in relevant part:

(1) An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue.  The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

[17] The majority rejects *Liddell* because "[n]othing in the plain language of MCL 500.3148(1) . . . requires an insurer to reconcile conflicting medical opinions." *Ante* at 14.  This argument makes little sense given that no language in either MCL 500.3142 or 500.3148(1) requires an insurer to do anything other than pay benefits within 30 days of proof from the claimant.  Otherwise, the benefits are deemed "overdue" and the insurer is liable for attorney fees under § 3148(1).  Aside from the term "reasonable proof," nothing in either statute discusses evidentiary burdens, offers any guidance for what constitutes "reasonable proof," or provides any edification on the issues before us in this case.  In fact, it is the majority that writes words into the statute by requiring claimants to provide more than "reasonable proof" when there is conflicting evidence regarding the cause of claimant's injuries.  This outcome is startling given the majority's oft-repeated mantra that unambiguous statutes must be enforced as written.  See, e.g., *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002).

10

as true or believable. . . . 5. (in judicial proceedings) evidence that seems to substantiate or corroborate a charge or allegation."[19]

In this case, it was not clearly erroneous for the trial judge to conclude that the medical opinion of plaintiff's doctor was sufficiently "logical" to establish plaintiff's claim "as true or believable." Therefore, the trial judge's finding that defendant's refusal to pay benefits was unreasonable under MCL 500.3142(2) does not constitute clear error.

However, even if, after defendant's doctor performed the IME that yielded a conflicting conclusion, plaintiff's doctor's opinion no longer sufficed as "reasonable proof" of plaintiff's claim, defendant may not immediately terminate benefits. Rather, an insurer that does not attempt to reconcile credible conflicting medical opinions before terminating benefits acts unreasonably.[20]

At the least, defendant in this case should have alerted plaintiff's treating physicians of the new contradictory opinion. This would have allowed plaintiff an

---

[18] *Random House Webster's College Dictionary* (2001).

[19] *Id.*

[20] I recognize that the majority criticizes this view for supposedly "impos[ing] additional duties on insurers beyond those duties already established in Michigan's no-fault insurance statutes." *Ante* at 15. However, as stated previously, I believe this requirement is consistent with the plain meaning of "reasonable proof." Moreover, I note that in practice, this requirement puts insurers on notice that immediately terminating benefits in the face of contradictory medical information, without any further action, is probably "unreasonable." By contrast, the majority's rule does not impose such a requirement but leaves an insurer to "act[] at its own risk in terminating benefits in

opportunity to submit additional proof to satisfy the "reasonable proof" threshold in MCL 500.3142(2). In my view, an insurer should not be able to create a bona fide factual uncertainty by choosing to reject plaintiff's doctor's credible opinion and rely solely on its doctor's "independent medical report." To allow insurers to terminate benefits on this basis alone contradicts the requirement that the factual uncertainty be "bona fide."

I further conclude that, even if *Liddell* is overruled, I would reach the same result because defendant "unreasonably delayed in making proper payment" under MCL 500.3148(1). I would so hold because defendant failed to pay plaintiff monies it knew were owed considering the computer glitch that had delayed payment.

Defendant conceded that the payment covering December 2000 to March 2001 was overdue and that it "admittedly owed" plaintiff 12 percent penalty interest for that late payment under MCL 500.3142(3). Defendant's failure to pay penalty interest that it acknowledged was owed to plaintiff constitutes an unreasonable delay in making "proper payment" under MCL 500.3148(1). Nothing in the statutory language restricts "proper payment" to overdue benefits.

The Legislature's decision to allow attorney fee awards where "the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment" demonstrates a preference that plaintiffs recover attorney fees in the

_____

the face of conflicting medical reports." *Ante* at 15-16. It seems to me that the

12

following circumstances: (1) if insurers unreasonably refuse to pay a claim at all, (2) if they unreasonably delay in paying the claim, or (3) if they unreasonably delay in paying the proper amount of the claim. Here, because defendant conceded that the penalty interest was owed on the overdue payment, it was unreasonable for it not to pay plaintiff the proper amount of that claim. The proper amount was the overdue benefits plus the 12 percent penalty interest.

I therefore conclude that the trial judge did not clearly err by holding that defendant's refusal to pay benefits was unreasonable.

## C. Attorney Fees

Because I believe that the trial court did not clearly err by concluding that (1) some benefits were overdue and (2) defendant's refusal to pay the claim was unreasonable, I further conclude that the trial court did not abuse its discretion in awarding plaintiff $79,415 in attorney fees. I also see no merit in defendant's argument that, even if plaintiff is entitled to attorney fees, she may recover only the portion directly attributable to securing overdue benefits.

In *Cole v Detroit Automobile Inter-Ins Exch*,[21] the defendant asserted that the trial court should have based its claim for attorney fees on the portion of time the attorney expended in pursuit of the unreasonably denied claim. The Court of Appeals rejected this position. Defendant here rejects *Cole* and relies on

majority's analysis leaves insurers twisting in the wind.

[21] *Cole v Detroit Automobile Inter-Ins Exch*, 137 Mich App 603, 613-614; 357 NW2d 898 (1984).

13

*Proudfoot v State Farm Mut Ins Co*[22] arguing that *Proudfoot* supports its argument and effectively overruled *Cole*.

This Court in *Proudfoot* reversed an award of attorney fees for benefits that were not yet overdue because they had not yet been incurred. Defendant argues that the Court of Appeals in this case incorrectly distinguished *Proudfoot* because the benefits at issue there had not yet been incurred, whereas the benefits at issue here were incurred.

However, as the Court of Appeals majority in this case held, there is no support for defendant's position in the plain language of the statute. The critical inquiry when determining whether attorney fees may be awarded is whether the plaintiff is maintaining "an action for personal or property protection insurance benefits which are overdue."[23]

If at least some of the benefits are found to be overdue, the lawsuit constitutes "an action for personal or property insurance benefits which are overdue" under MCL 500.3148(1). Under these circumstances, a plaintiff is entitled to an award of attorney fees. Here, the trial judge's award of the entire amount of attorney fees requested by plaintiff was not outside the range of principled outcomes because the jury found that benefits were overdue. Thus, the trial judge did not abuse his discretion.

---

[22] *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476; 673 NW2d 739 (2003).

[23] MCL 500.3148(1).

D.  Public Policy and the No-Fault Act

Finally, I note that my dissent is consistent with the purpose of the no-fault act.[24]  The majority's opinion, by contrast, undermines the Legislature's intent of providing injured parties adequate and prompt reparation from insurers.  I fear that the majority opinion provides further opportunity for insurers to abruptly deny claims by holding plaintiffs to a higher standard than the "reasonable proof" requirement of MCL 500.3142(2).

CONCLUSION

I dissent from the majority's decision to reverse the trial court's award of attorney fees to plaintiff.  The Court of Appeals decision should be affirmed.


Marilyn Kelly
Elizabeth A. Weaver

---

[24] See, e.g., *Shavers v Attorney General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978), which observed that the "goal of the no-fault insurance system [is] to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses."